No. 44,887

THE STATE OF KANSAS, *Appellee, v.* DAVID WALTER HART, *Appellant.*

(434 P. 2d 999)

154

Opinion
filed December 9, 1967.

*Russell Shultz,* of Wichita, argued the cause, and *Larry Kirby,* of Wichita, and *William J. Walsh,* of Concordia, were with him on the brief for the appellant.

*Kenneth E. Peery,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, David Walter Hart, was convicted of possessing burglary tools, in violation of K. S. A. 21-2437, and he has appealed. For convenience, the parties will be referred to, respectively, as plaintiff or state, and defendant or Hart.

In summary, the state's evidence showed that on the morning of February 12, 1966, two peace officers saw the defendant and two male companions walking in a southwesterly direction across the driveway of a filling station located at the intersection of Seventh

and Lincoln Streets, in Concordia, Kansas. The defendant was observed to be keeping his left hand in the pocket of the topcoat he was wearing and held his right hand underneath the coat in the area of his left shoulder.

The two officers watched the trio as they proceeded west a short distance on Seventh Street, where the defendant turned north and walked up a driveway between two houses. On rejoining his companions a few moments later, the officers observed that Hart was carrying his arms normally at his sides. As the three men continued west, the officers drove to the driveway where Hart had turned, at which place officer Alkire got out of the car and walked about fifty feet up the driveway where he found a new sledge hammer lying in the bushes between the two houses.

Upon finding the hammer the officers drove after the men, overtaking and stopping them a block or so away. On being asked for identification, the defendant produced a Montana draft card, another man showed a Montana driver's license, while the third had no identification, but said his name was Jerry Jordan, which was later found to be false, and that he worked on a ranch near Strong City. At this time trooper Shepherd saw a tool of some kind with green handles protruding from Jordan's pocket. The men disclaimed knowledge of the sledge hammer, refused to answer questions about it, and kept asking if the officers had a warrant.

When asked to accompany the officers to the police station to talk about the hammer, the men refused and jerked away when the officers started to take hold of their arms. The three were then placed under arrest and taken to the station where they were found to have some $1500.00 in currency, including six or seven $100.00 bills with consecutive serial numbers, plus a pair of tin snips or metal cutters which were in the pocket of the jacket worn by Jordan—or Jerrel, as his name turned out to be.

Later that day a car bearing Montana tags and belonging to Hart, was found in the parking lot of Boogaart's Super Market, which had been visited that morning by three strangers, one being identified as the defendant. The strangers had separated after entering the store, stayed about five minutes, and then left together without making any purchases.

In the afternoon, after phoning Montana officers, the sheriff secured a search warrant for the defendant's car. The search turned up a motley collection of articles, including crowbars, flashlights,

gloves, two walkie talkie radios with obliterated serial numbers, assorted pliers and screwdrivers, a gas can and spout, a canvas bag, rifle and shotgun shells, a high speed hacksaw blade, an artisan punch, a chisel, a lockpick, prying tools, a briefcase containing a money sack with $329.49 in loose change, $178.00 in currency loose in an armrest, a probe or feeler gauge, assorted hats, jackets, etc.

The defendant first contends that K. S. A. 21-2437 is unconstitutional as being unreasonably vague and indefinite. The statute reads:

"That any person who makes, mends, designs, or sets up, or who knowingly has in his custody or concealed about his person, any instrument or any other mechanical devices whatsoever, nitroglycerine or other explosive, designed or commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a dwelling of any kind, shall be guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the penitentiary for not less than one year nor more than three years."

Although the statute was enacted in 1907, this is its first appearance before this court. The obvious purpose of this enactment is to minimize the incidence of burglaries. To such end, many states, including Kansas, have enacted laws prohibiting the making, mending, possession, etc. of so-called burglary tools. The several statutes, while designed to achieve the same goal, are found to differ, in some respects, as to their contents. By far the greater proportion of those we have researched, specifically include, as an element of the crime, an intent that the tools be used for burglarious purposes.

While the Kansas statute omits specific reference to intent, we nonetheless believe that, when properly construed, K. S. A. 21-2437 requires an intent on the part of one having burglary tools in his possession, to employ those tools in burglarious activities. A leading case on this point is *State v. Hefflin*, 338 Mo. 236, 89 S. W. 2d 938, 103 A. L. R. 1301, in which the defendant was charged with the possession of certain burglary tools under a statute which, much like ours, did not expressly require a criminal intent to use the tools burglariously. The court, in holding the Missouri statute to mean that the possession of tools referred to therein must be made, mended, possessed, etc., with the general intent they be used for burglarious purposes, said, on p. 249:

"Ordinarily, when an act is made criminal by statute, the existence of a criminal intent is to be regarded as essential, even when not in terms required. . . ."

We believe the Missouri court's construction of their statute was correct and that the Kansas statute necessarily bears the same interpretation. In *State v. Lawson*, 59 N. M. 482, 286 P. 2d 1076, it was argued by the defendant that under the New Mexico statute intent was not required, but only possession, and hence the statute was void because of indefiniteness and uncertainty under the New Mexico Constitution. In the course of its opinion, which rejected the defendant's contention, the court quoted from *State v. Shedoudy*, 45 N. M. 516, 524, 118 P. 2d 280, 285:

"Generally speaking, when an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, although the terms of the statute do not require it. (Citing cases.) But the legislature may forbid the doing of an act and make its commission criminal, without regard to the intent with which such act is done; but in such case it must clearly appear from the Act (from its language or clear inference) that such was the legislative intent. (Citing authority.)

"It follows that whether a criminal intent is to be regarded as essential, is a matter of construction, to be determined from a consideration of the matters prohibited, and the language of the statute, in the light of the common law rule." (Citing cases.)

There is no language in the present statute clearly indicating that criminal intent is not required, nor can such an inference be drawn from its language. Moreover, consideration of the subject matter of the statute, and the general purpose to be served thereby, leads us unerringly to the conclusion that the gravamen of the offense proscribed by the statute is, so far as this case is concerned, the possession of burglary tools intending they be put to a burglarious use. Otherwise, the innocent possession of ordinary tools which are suitable for and commonly used in unlawfully breaking and entering another's property, might very well subject an honest workman to the statute's penalty. Certainly the legislature intended no such outlandish result when it enacted this legislation. As was said in *Dennis v. United States*, 341 U. S. 494, 499, 95 L. Ed. 1137, 71 S. Ct. 857:

"The structure and purpose of the statute demand the inclusion of intent as an element of the crime."

It is appropriate to observe, however, that an intent to use the tools in a particular or specific burglary is not required. The intent is sufficient if it consists of a general purpose to employ the instruments in the course of burglarious episodes, whenever and wherever

opportunity might present itself. (12 C. J. S., Burglary, § 69, p. 754; *People v. Taylor,* 410 Ill. 469, 102 N. E. 2d 529.)

So construed, we have no hesitancy in holding the statute to be free of constitutional infirmity. In *Mahar v. Lainson,* 247 Iowa 297, 72 N. W. 2d 516, cert. den., 350 U. S. 972, 100 L. Ed. 843, 76 S. Ct. 445, reh. den., 350 U. S. 1009, 100 L. Ed. 871, 76 S. Ct. 652, an Iowa statute was challenged in a habeas corpus proceeding as being unconstitutional because of the failure to define "burglar's tools." In rejecting this contention, the Iowa court said:

"This statute and similar statutes have been considered by this and many other courts across the land, and it has been the subject of comments in many textbooks. Yet as far as we can learn, not once has the legislation been declared void or unconstitutional as violation of due process. The appellant failed to cite any such holding, but simply refers us to the statute and the State and Federal Constitutions, and argues such prohibition is so general no one could possess ordinary tools or implements and avoid prosecution under that statute." (p. 299.)

The Iowa court went on to say that the offense prohibited was the possession, with intent to commit burglary, of tools or implements which conformed in kind to instruments suitable and commonly used to break and enter burglariously, citing among other cases, *State v. Hefflin,* supra. The court concluded its discussion on this point by saying:

"So it is with our statute, and the tools contemplated as 'burglar's tools' therefore are those tools or implements suitable or commonly used by a burglar in committing the crime of burglary. No other interpretation of this statute is reasonable or proper, and under such construction the prohibition is clear. Thus it must appear there is no violation of due process and the legislation must be declared constitutional." (p. 301.)

In *Shafer v. State,* 214 Tenn. 416, 381 S. W. 2d 254, cert. den., 379 U. S. 979, 13 L. Ed. 2d 570, 85 S. Ct. 683, the court followed and quoted at length from the Mahar case in rejecting a contention that the Tennessee statute violated the 5th and 14th amendment to the United States Constitution as being vague and ambiguous in establishing a standard for evaluating the articles which could be deemed burglarious.

The defendant calls attention to the general rule that penal statutes must set up ascertainable standards and, where a statute either requires or forbids the doing of an act in terms so vague and ambiguous that men of ordinary understanding or common intelligence can only guess at its meaning and differ as to its application, it lacks the first essential of due process. (21 Am. Jur. 2d,

Criminal Law, § 17, p. 99.) We are in accord with this principle, but fail to see its application here.

The conduct forbidden by K. S. A. 21-2437 is the possession (or making, mending, etc.) of tools or devices suitable for and commonly used in unlawful breaking and entering, *with intent to use those tools for that unlawful purpose.* We think even the most stupid member of the housebreaking cult would understand that such undesirable conduct falls within the prohibition of the statute. In *State v. Hill,* 189 Kan. 403, 411, 369 P. 2d 365, 91 A. L. R. 2d 750, we defined the test to be applied, in these words:

". . . The test is whether the language conveys a sufficient definite warning as to the proscribed conduct when measured by common understanding and practice." (Citing cases.)

And in 21 Am. Jur. 2d, Criminal Law, § 17, p. 101, we find the rule stated in this wise:

"A criminal statute will not be held void for uncertainty if any reasonable and practical construction can be given its language. And if the general class of offenses at which it is aimed can be made constitutionally definite by reasonable construction, the court's duty is to give the statute that construction. Where an offense is vaguely defined, some courts will save the constitutionality of the statute or ordinance by giving it a narrower construction than its literal language suggests. . . ."

But, the defendant argues, the statute was not intended to apply to the possession of legitimate tools, but of devices *particularly* designed or constructed for breaking into buildings, homes, vaults, etc. We disagree. It need not appear that tools or implements were originally made for an unlawful purpose if they are suitable, through design or construction, to be used for the unlawful purpose of committing burglary—assuming of course the instruments are possessed with such unlawful end in mind. (See 103 A. L. R. 1313, *et seq.,* 13 Am. Jur. 2d, Burglary, § 74, p. 368; *State v. Puckett,* 237 S. C. 369, 117 S. E. 2d 369.)

Many a tool may be innocently possessed by an artisan, or workman, or even a common householder, without subjecting the possessor to criminal liability under the statute, yet if the tool be suitable and commonly used for breaking into other people's homes or stores, or safes, and if it be possessed for such nefarious purposes, it clearly comes within the statute's ban.

The defendant next contends it was error for the court to admit into evidence both the sledge hammer recovered from the bushes between the houses on 7th Street, and the metal cutters taken from

Jerrel at the jail, inasmuch as they were the fruits of an unlawful arrest.

We believe this contention is without merit. In the first place, we have difficulty in comprehending how it can be said that the sledge hammer was obtained through an arrest at all. True, it was recovered under suspicious circumstances, the officers having seen the defendant, mere minutes before, walk back between the houses, apparently carrying something concealed under his coat, and emerge therefrom almost immediately, unburdened. The discovery of the hammer thus preceded the arrest; it may well have been one of the primary causes for the arrest; but it did not follow or result from the arrest.

Secondly, we believe the arrest itself was legal, even though effected without a warrant. The law is well defined in this state that an officer may make a valid arrest without a warrant in case of felony if he has probable cause to believe the person arrested has committed a felony, (*State v. Wood,* 190 Kan. 778, 378 P. 2d 536) and in case of a misdemeanor, when the offense has been committed in his presence. (*State v. Goering,* 193 Kan. 307, 392 P. 2d 930.)

The defendant argues that no misdemeanor was committed in the presence of the officers, since the sledge hammer found by officer Alkire, which was valued at less than $9.00, was not proved to have been stolen. In this we agree, for while the hammer was shown to have come from a local store, there was no evidence it had been purloined therefrom.

But the arrest was not made because a misdemeanor had been committed in the officers' presence, but rather on the basis of probable cause that the three men were in possession of burglary tools— a felony. Both officers testified that such was the ground of their action, and we believe they were justified in proceeding on that basis. In *State v. Brown,* 198 Kan. 473, 477, 426 P. 2d 129, we said:

". . . Probable cause exists if the facts and circumstances known to the officer warrant a prudent man's believing that a crime has been committed at or before the time of arrest. . . ."

There was sufficient ground for the officers to believe, as reasonably intelligent and prudent man, that the defendant had carried the sledge hammer concealed under his topcoat, and that he had surreptitiously cached the same in the bushes between two houses, just before officer Alkire found it there. Such a belief, reasonable in itself, and coupled with knowledge that this kind of hammer

is commonly used by burglars, and of a kind used in recent burglaries in the Concordia area was enough in our opinion, to establish probable cause for the officers to believe the men were engaged in the commission of a felony, *i. e.*, possession of burglary tools. The metal cutting tool obtained from Jerrel's pocket, where it had previously been observed, was admissible also, as having been obtained through a search made incident to a lawful arrest. (*State v. Brown*, supra.)

If it be objected that the cutting tool was in the possession of Jerrel, not Hart, and was thus inadmissible against Hart, we would answer that we understand the law to be that, for the purpose of this statute, possession of burglary equipment may be joint as well as individual, and that two or more persons may have the power of control over burglary tools and intend to control and use them jointly, so that all become criminally liable. (12 C. J. S., Burglarly, § 69, p. 754.) Nor is ownership of the proscribed instruments a requisite of the offense; possession or power of control is the criterion. (12 C. J. S., supra, p. 755.)

The defendant next maintains that the search of his automobile was illegal, and that the court therefore erred in admitting the articles obtained through the search. The gist of defendant's argument is that the search warrant was issued without probable cause or, to put it more explicitly, that there was insufficient information before the magistrate issuing the warrant to enable him to make an independent judgment that there was probable cause for its issuance. An objection to the admission of the items taken from Hart's car was first made by a motion to suppress evidence, at the hearing on which the sheriff, who signed the affidavit on which the warrant was issued, testified fully. The motion to suppress was overruled, as were later objections made at the time the items were individually offered in evidence.

The search warrant was issued pursuant to the provisions of K. S. A. 62-1830, and from our examination it appears to be in substantial compliance with the form prescribed in K. S. A. 62-1831. The defendant infers that the warrant authorizes or directs that the search of the defendant's car be made for evidence of crimes committed in other states, as well as in Kansas. We fail to grasp the defendant's point, for we find no reference to crimes committed in other states in the warrant. While the sheriff's affidavit contains some such reference, the warrant itself does not.

It appears to us that no valid objection can be advanced, either as to the affidavit, or the basis upon which this warrant was issued. The sheriff's affidavit recites that he has found the defendant and his companions to be in possession of certain tools useful in committing burglaries; that he has good reason and information to believe they have committed burglary and are fugitives from justice; that the vehicle was used in connection with burglary and contains certain fruits, instrumentalities of crime under the laws of this or some other state; and that a warrant is needed to search the car for burglary tools and other items useful in burglary or other fruits or instrumentalities of crime.

We are mindful of what has been said in *Nathanson v. United States*, 290 U. S. 41, 78 L. Ed. 159, 54 S. Ct. 11; *Giordenello v. United States*, 357 U. S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245; and *Aguilar v. Texas*, 373 U. S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; and we recognize the precedent established by those cases. The import of those decisions, as we read them, is that before a search warrant may validly be issued, there must have been placed before the issuing magistrate sufficient facts to enable him to make an intelligent and independent determination that probable cause exists; that bald conclusions or mere affirmations of belief or suspicion are not enough; and while an affidavit may be based on hearsay, there must be sufficient affirmative allegations as to the affiant's personal knowledge or his knowledge concerning his informant, or as to the informant's personal knowledge of the things about which the informant spoke, to provide a rational basis upon which the magistrate can make a judicious determination of probable cause.

In our opinion, the sheriff's affidavit in the present case meets the test laid down in the foregoing authorities. The affidavit recites, explicitly, that the sheriff has found Hart and his two companions to be in possession of certain tools useful in committing burglary. This is an averment of positive fact; it is not a conclusion or a mere belief founded on some unknown or undisclosed affiant's word. The affiant continues that it is necessary to search the automobile for burglary tools and other items useful in burglary.

At the hearing on the defendant's motion to suppress, the sheriff testified in detail how he had found the defendants in possession of burglary tools; that he was present when the metal cutters were found on Jerrel; that he saw the sledge hammer and heard about

its acquisition from one of his own officers, and that he had personally seen through the windows of Hart's car, a chisel and a punch, both useful in committing burglaries, lying on the floor of the car. This was not a mere fishing expedition on the part of the sheriff, as the defendant contends. The sheriff had found the defendants in possession of burglary equipment and so stated in his affidavit. Such should be sufficient to meet the most stringent of tests devised by higher judicial authority.

It is true the affidavit contained other allegations, based on information and belief, and it may be that these allegations would not satisfy the test which has been laid down. However, it has not been held, to our knowledge, that the affidavit must pinpoint every source of an affiant's belief, so long as it discloses a sufficient basis on which a finding of probable cause can be made.

The defendant asserts that the verdict was contrary to the law and the evidence. We think the verdict was contrary to neither. The evidence pertaining to the sledge hammer pointed unerringly to its possession by Hart. While the evidence may be termed circumstantial in nature, it was nevertheless substantial and could well be considered persuasive. The car from which the collection of sundry tools, instruments, etc. was taken belonged to Hart, the key thereto was in Hart's possession and was obtained from Hart by the sheriff. The tools and instruments were well identified as being of the kind customarily and commonly used by characters who ply the evil trade of burglary.

In addition, there was significant evidence of intent on the defendant's part to use the tools unlawfully. Proof was introduced of a prior conviction of the defendant for burglary. This evidence was admitted solely as it might bear on the question of the defendant's intent, and the trial court instructed to such effect. The evidence was entirely competent for that purpose. (*State v. Kappen*, 191 Iowa 19, 180 N. W. 307; *Fennen v. Commonwealth*, 240 Ky. 530, 42 S. W. 2d 744; *People v. Jefferson*, 161 Mich. 621, 126 N. W. 829.

Proof of intent may be inferred from the circumstances which attend the possession of burglary tools. In *State v. Hefflin*, supra, and *People v. Taylor*, supra, some of those circumstances are set out, such as the concealment of tools on one's person, or in his clothing; carrying tools in a car instead of keeping them in a shop; resistance to arrest; and possessing items not suitable for breaking, in and of

themselves, but which might be useful in burglarious enterprises, generally. (See, also, 103 A. L. R., supra.)

While many items found in defendant's car were by design and construction suitable for use in breaking into and entering property belonging to others, and were such as are commonly used for such purpose by men of criminal inclination, other items found in the car were not susceptible of such use but, nevertheless, were relevant on the question of intent. To list but a few: possession of two walkie talkies, with serial numbers defaced might well be considered significant, as might the money sack, $329.49 in loose change, $178.00 currency found in the arm rest, ammunition, and numerous pairs of gloves.

In our opinion the verdict was amply sustained and supported by the evidence.

Complaint is made concerning the instructions given the jury. We believe this criticism wholly unfounded. Particular criticism is levelled against Instructions 11 and 12 which pertain to intent. We believe the law is particularly well phrased in those instructions and we find no merit in the defendant's contention. The trial court did a commendable job in formulating its instructions on the law governing this case. Because we feel they may prove helpful to members of the bench and bar, we include certain of the instructions in an appendix hereto.

Careful consideration has been given to the several issues raised in this appeal and we discern no error. The judgment is affirmed.

## APPENDIX

### INSTRUCTION No. 8

To be guilty of the offense charged in this case, it is not necessary that the tools be especially or exclusively designed for burglary. It is immaterial that the tools may be designed or adapted for honest and lawful purposes. If an intention exists to use such tools or combination of otherwise innocent tools for burglarious purposes, it is sufficient.

### INSTRUCTION No. 9

Mere possession of tools which might be used for an unlawful purpose is not enough to convict the defendant of the present charge. The prosecution must prove beyond a reasonable doubt:

(a) That defendant had the tools in his custody in Cloud County, Kansas, on or about February 12, 1966.

( *b* ) That the tools were designed or commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a dwelling of any kind, and the defendant knew this fact.

( *c* ) That the defendant had an intent to use these in a burglarious manner.

If the prosecution has failed to prove any single element set out above to your satisfaction, beyond a reasonable doubt, you must find the defendant not guilty.

### Instruction No. 12

To prove the defendant guilty of this offense the State must prove that the defendant had the intent to use these tools for some burglarious purpose. However, the State need not show that the defendant intended to use them for any particular burglary, a general burglarious intent being sufficient. The intent of the defendant may be proved from the nature of the tools themselves, from the circumstances under which they were in the defendant's custody, if you find they were in his custody, and by other evidence.