No. 45,405

STATE OF KANSAS, *Appellee,* v. SEVEN SLOT MACHINES, and FRATERNAL ORDER OF EAGLES, Intervenor, *Appellants.*

(457 P. 2d 97)

Opinion filed July 17, 1969.

*William R. Stewart* and *John C. Humpage,* of Topeka, argued the cause, and were on the brief for the appellants.

*Richard H. Seaton,* assistant attorney general, argued the cause, and *Kent Frizzell,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This appeal arose out of an *in rem* proceeding brought by the state of Kansas pursuant to K. S. A. 21-915, -925 and -927, requesting the confiscation and destruction of seven slot machines in possession of intervenor (appellant), the Fraternal Order of Eagles, Topeka.

The chronology of events leading up to the commencement of this action is as follows:

Harley E. Sparks, a special investigator for the county attorney's office in Olathe, had been assigned to the attorney general's office on December 1, 1967, to investigate the existence and operation of slot machines at the Eagles Lodge in Topeka. Sparks had been a member of the Eagles Lodge in Olathe in 1966 and still had in his possession his membership card to that lodge. On December 1, Sparks went to the lodge in Topeka, presented his 1966 membership card, and was admitted by the doorkeeper. Sparks signed his name to the Register of Visitors, filled in the number of his local club, his current home address, and proceeded into the lodge rooms where the slot machines were located. He saw a number of people playing the machines and observed the machines pay off in money to the players. Sparks played several of the machines, placed the money he obtained from each machine in separate envelopes on which he noted the amount received and the denomination of the machine, then marked each machine he played with fluorescent tracer paste, and later left the lodge.

On December 4, Sparks went to the attorney general's office and, with the information gained on the night of the 1st, wrote his statement in longhand. The statement was then put in typewritten form by a typist in that office, in the presence of an assistant attorney general who inquired of Sparks, before a notary public, if the contents of the statement were true. Sparks stated they were, signed the affidavit, and the notary affixed her seal.

On December 8, the assistant attorney general presented the affidavit to a judge of the district court of Shawnee county who, after reading the affidavit, issued a search warrant for the above-mentioned premises. At approximately 7:00 p. m. agents of the Kansas Bureau of Investigation, along with other assistant attorneys general, entered the lodge and seized the slot machines. Subse-

quently, the state initiated this action by an information filed December 12.

On December 14, a motion to suppress the seven slot machines as evidence was filed on behalf of the Eagles, and a full evidentiary hearing was held January 3, 1968, at which time the matter was taken under advisement. On January 15, the Eagles moved to intervene, setting forth their possessory interest in the machines. Upon their motion being sustained they were joined as a party defendant, and throughout the course of this opinion will be referred to as appellant.

After examining the evidence adduced at the hearing, the trial court, on January 19, overruled the motion to suppress and issued its memorandum decision on the merits of the action, wherein it concluded:

". . . that these slot machines seized on the premises of 920 Kansas Avenue, . . . occupied by the Fraternal Order of Eagles, were being operated while in the possession of said Fraternal Order of Eagles, and therefore since the operation of said slot machines is illegal under the law as it now exists, the court is ordering that said slot machines be destroyed."

This appeal followed.

The three points raised here, as well as in the lower court, will be discussed in the order briefed.

Appellant urges the purported affidavit of Harley Sparks upon which the search warrant was issued was insufficient to establish probable cause under the Fourth and Fourteenth Amendments to the United States Constitution. The claim is based upon the argument that Sparks was in the position of an informer, and since the affidavit was the only evidence presented to the judge and contained nothing relating to Sparks' credibility and reliability, there was an insufficient showing of probable cause. Appellant relies principally on *Aguilar v. Texas*, 378 U. S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *United States v. Ventresca*, 380 U. S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741, contending that before probable cause may be found for the court or magistrate to issue a search warrant, the court must have evidence before it concerning the credibility and reliability of the informant and the informant's information; and absent this, the court is but a "rubber stamp" for law enforcement officers.

We believe appellant misconceives the import of the decisions cited in a situation where, as here, the information contained in the affidavit is based upon the affiant's personal knowledge and observa-

tion, rather than hearsay statements or information gained from some unidentified or third-party source.

In the recent case of *State v. Hart*, 200 Kan. 153, 434 P. 2d 999, we discussed the precedent established by the federal decisions, including those cited by appellant in its brief, and said:

"It is essential to the validity of a search warrant that the issuing magistrate be provided with sufficient facts to enable him to make an intelligent and independent judgment that probable cause for its issuance exists; bald conclusions or mere affirmations of belief or suspicion are not enough.

"While an affidavit may be based on hearsay, there must be adequate affirmative allegation of the affiant's *personal knowledge of facts* or of his informant's reliability, or as to the informant's personal knowledge of the information provided, to provide a rational basis upon which the issuing magistrate can make a judicious finding of probable cause." (Syl. ¶¶ 10, 11.) (Emphasis added.)

(Also, see, *State v. Aten*, 203 Kan. 920, 457 P. 2d 89.)

Both of these cases make it abundantly clear that constitutional requirements are satisfied as long as the issuing magistrate has before him sufficient facts to enable him to make an intelligent and independent determination that probable cause exists from affirmative allegations based on the affiant's personal knowledge or observation.

In *Hart*, the sheriff's affidavit, which was the basis for the issuance of the search warrant, recited that the sheriff found defendant and his companions to be in possession of certain tools useful in committing burglary. This, we observed, was an averment of a positive fact which, together with other allegations based on information and belief, was held to be sufficient. Likewise, in *Aten*, there was considerable testimony by the county attorney which we said constituted positive averments based on his personal knowledge.

In the instant case the court found probable cause based upon the affidavit of Sparks wherein he recited in great detail the result of his firsthand observations and his actual operation of the slot machines on the appellant's premises. Affiant made no reference whatsoever to any hearsay information or factual allegations based other than on his personal observation and participation. At the hearing on appellant's motion to suppress, Sparks testified and fully supported the statements contained in his affidavit. No question is raised that the factual observations related by Sparks in his affidavit were insufficient as a matter of law for the magistrate to make a finding of probable cause.

K. S. A. 62-1830 provides in substance that a search warrant shall issue upon *affidavit* or upon oral testimony given under oath and recorded before the magistrate or judge. For the reasons stated, we hold the affidavit in question constituted a sufficient basis upon which the court could make a judicial finding of probable cause to issue the search warrant.

Appellant further questions the reasonableness of the search and seizure because the warrant was based on information secured through entry to the lodge premises by means of fraud, false representation and stealth. Appellant, unjustifiably in our view, attempts to equate the facts here with those in *Fraternal Order of Eagles No. 778 v. United States,* 57 F. 2d 93 (3d Cir. 1932). There, prohibition agents presented false membership cards in order to gain entrance to the lodge, which cards bore written names and signatures of bona fide members of distant lodges from which the cards had been surreptitiously taken. What had been seen by the agents after their entry into the lodge was used as a basis for making application for a search warrant. The search pursuant to the warrant was held illegal and unreasonable as being in violation of the Fourth Amendment.

Numerous cases relied on by appellant, including *Fraternal Order of Eagles No. 778 v. United States,* supra, were cited and discussed in *United States v. Bush,* 283 F. 2d 51 (6th Cir. 1960), where it was stated:

". . . [A]n entrance by stealth upon a person's property is equivalent to an entrance by force and, therefore, unreasonable.

"However, the distinction has been drawn between a search warrant obtained as a result of information secured through force, coercion and stealth, and one obtained by an officer's concealment of his identity, and his posing as a member of the general public.

"Investigator Hahn, in his conversation with Mrs. Bush, told her his name was Ray, which was true since his full name was Raymond Hahn; and he further told her he worked in a foundry in Knoxville—which was not true.

. . . . . . . . . . .

". . . Here, it is true, the government agent was a trespasser in the sense that he drove into the driveway of appellee's premises. In like manner he would be a trespasser if he approached appellee's front door and stood on his porch, ringing the doorbell. Whatever his status, as he drove into the driveway and stood on appellee's premises, he secured no information upon which the warrant was based until he was told by Mrs. Bush, in replying to his request to buy liquor, that she would show him what she had, and 'motioned' him into her kitchen. This appears clearly to have been an invitation by Mrs. Bush to come into the house.

"As to misrepresentations made to Mrs. Bush, we are of the view that the only misrepresentation was that the agent hid his identity as an officer and posed as a member of the general public. Evidence obtained by law enforcement officers, using the subterfuge of hiding their identity in order to pose as members of the general public, has consistently been held to be admissible. . . ." (pp. 52, 53.)

In *People v. Walker*, 30 Ill. 2d 213, 195 N. E. 2d 654, a similar question was presented, and the court distinguished the situation from that presented in the *Eagles* case, supra, and *United States v. Mitchneck*, (D. C. Pa.) 2 F. Supp. 225, saying:

". . . [I]n those cases the police officers involved took *affirmative* steps to conceal their actual identity. . . .

"There is nothing in the record in the present case to indicate that the officer presented himself at the defendant's door as anything other than a member of the general public. The defendant did not allege nor offer any evidence to the effect that the officer made any *affirmative misrepresentations as to his identity*. And he was not, in our opinion, under any obligation to voluntarily identify himself as a policeman prior to entering the premises. (*United States v. Bush*, (6 cir.) 283 F. 2d 51.). . . ." (pp. 215, 216.) (Emphasis added.)

The *Bush* case was cited with approval in *Benson v. California*, 336 F. 2d 791 (9th Cir. 1964), and *Whiting v. United States*, 321 F. 2d 72 (1st Cir. 1963), cert. denied, 375 U. S. 884, 11 L. Ed. 2d 114, 84 S. Ct. 158.

In the instant case, the most that can be said is that Sparks presented his own membership card, signed his true name with the name of his local lodge and home address, and was admitted to appellant's premises without any *affirmative* or *unlawful* steps being taken to conceal his identity as an investigator for the attorney general. Under the circumstances disclosed by the record, we have considerable difficulty in even saying the appellant was relying on the privacy of its club or its operation when it allowed Sparks to enter in the manner in which he did and subsequently observe and use the slot machines. His entry, in our opinion, was gained neither by force, fraud, stealth nor misrepresentation, such as proscribed in the cases relied on by appellant. Sparks was in the club by invitation under the mistaken belief that he was a current member in good standing of another lodge. The Fourth Amendment was designed to protect against the abuse of official authority (*Fraternal Order of Eagles No. 778 v. United States*, supra), but, as expressed

in *Hoffa v. United States*, 385 U. S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408:

"Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects the wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." (p. 302.)

We agree with the district court's conclusion that there is no basis for holding the search was illegal because of the means used by Sparks in gaining admittance to appellant's premises and obtaining the information which led to the issuance of the search warrant.

Appellant finally urges that Sparks' execution of the statement purporting to be an affidavit did not possess any minimal formality, or the intent of an oath, and hence, it did not constitute an affidavit which could be used as a basis for establishing probable cause under K. S. A. 62-1830. In support of its position appellant seizes on a bit of Sparks' testimony at the hearing on the motion to suppress in which he was asked a question whether he intended to be sworn before Almighty God as to the truth and contents of the affidavit, to which Sparks replied, "No, sir." This was followed by the question, "So the fact of the matter is that the affidavit you executed then was done so without benefit of the Almighty, is that correct?" Sparks replied, "If you are talking about raising my right hand and swearing, yes."

Appellant overlooks other testimony of Sparks on redirect examination, wherein he stated that when he signed the affidavit he understood he was obligated to tell the truth, and he knew that he could be penalized for perjury if he told an untruth in the statement. He further testified as to the manner in which the affidavit was prepared and signed. When Sparks went before the notary to execute the instrument he was asked if its contents were true, and he stated they were. Thereupon, he signed the affidavit and the notary affixed her seal. Further, the affidavit recites, "I, Harley E. Sparks, of lawful age, being first duly sworn, do upon my oath state . . ." followed by the notary's certificate, "Now on this 4th day of December, 1967, came Harley E. Sparks before me and having been first duly sworn did subscribe to and execute the foregoing statement in writing."

Although we have examined the cases from other jurisdictions cited by appellant to support its position that unless an oath was administered with formality and the affiant sworn before Almighty

God, the affidavit is deficient, we are of the opinion the question is controlled by our own decisions of *State v. Kemp,* 137 Kan. 290, 20 P. 2d 499, and *State v. Anderson,* 178 Kan. 322, 285 P. 2d 1073.

The *Kemp* case dealt with a perjury conviction where the contention was made there was no proof an oath had been administered in connection with verification of an answer. The court, speaking through Mr. Justice Burch, said:

"Besides what has been said, Kemp went to the notary with a blank form to be made into an affidavit with a certificate that the formalities of a solemn ceremony had been observed . . . The notary had before him the certificate to be executed, which if executed would declare Kemp was sworn. The notary executed the certificate. Manifestly, both parties intended that out of Kemp's visit to the notary there should come what would have the effect of administration of an oath; and the court holds that in the absence of clear proof the ceremony, or lack of ceremony, was designed by the participants to leave Kemp unsworn, the legal effect of what occurred was the same as if Kemp was sworn according to formalities prescribed for administration of an oath. . . ." (pp. 292, 293.)

To similar effect is the *Anderson* case, which involved the crime of perjury, where it was stated:

"Notwithstanding the provisions of G. S. 1949, 54-102 as to the formalities to be observed in the administration of an oath, where a person appears before a judge of the county court who is authorized to administer oaths and makes statements as a result of which a complaint is prepared stating that such person, being duly sworn says certain specific things, and thereafter reads the prepared complaint and signs it and returns it to the judge who signs the jurat thereon and affixes his official seal, in the absence of clear proof to the contrary that the ceremony or lack of it was designed by the participants to leave the maker of the complaint unsworn, the legal effect of what occurred was the same as if the maker was sworn according to the formalities prescribed in the above statute." (Syl. ¶ 3.)

After examining the record, we find there was a complete absence of clear proof that the ceremony or lack of ceremony was designed by the participants to leave Sparks unsworn, and appellant's contention in this respect is unmeritorious.

The judgment is affirmed.