## No. 45,587

STATE OF KANSAS, *Appellee*, v. HERBERT WALTER ATEN, *Appellant*.

(457 P. 2d 89)

Opinion filed July 17, 1969.

*Robert V. Talkington,* of Iola, argued the cause, and *J. D. Conderman,* of Iola, was with him on the brief for the appellant.

*Mitchell H. Bushey,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant, Herbert Walter Aten, appeals from a judgment and sentence on a conviction by a jury of grand larceny (K. S. A. 21-533).

On appeal defendant contends articles found in his automobile were erroneously admitted into evidence because the warrant authorizing the search was issued on an insufficient factual basis. Defendant further contends the state's evidence was insufficient to establish the commission of the alleged crime. No complaint is made concerning the trial court's instructions and they are not incorporated in the record on appeal.

On December 21, 1966, Kenneth Wight, a resident of Iola, disappeared and has not been seen since such date. According to the testimony of his wife, Wight left home on the morning of December 21, 1966, taking money for a bank deposit with him. He said he was going Christmas shopping and asked her what she wanted for Christmas. Mrs. Wight further testified that Mr. Wight had told her children that he intended to buy a color television set for the home for Christmas.

Peace officers had been on the lookout for defendant since Wight's disappearance. On January 9, 1967, defendant was found at the Vernie Diehl residence near Iola by the undersheriff of Allen County. Two police officers of Iola and Ray Emmons, a special agent for the Kansas Bureau of Investigation, were called to the Diehl residence by the undersheriff. Defendant was asked by the officers to accompany them to the courthouse in Iola and discuss whether or not he knew anything about the disappearance of Mr. Wight. Defendant, accompanied by a policeman, drove his automobile to the sheriff's garage at the courthouse. Defendant was next taken to the county attorney's office where he was fully advised as to his constitutional rights, following which defendant said he would answer some questions and some he would not. Defendant was asked where he had been since December 22, and he stated he had been to Independence, Parsons and Cherryvale, working in salvage yards and junking; he knew nothing about Kenneth Wight or his disappearance. When asked if he had any money on him, defendant pulled out his billfold and showed the officers a $100 bill,

a fifty, some twenties and tens. Defendant stated he earned the money working at the salvage yards, "junking," and that he won the $100 bill in a "crap game." He was unable to give details concerning his acquisition of the money. At this point, agent Emmons asked defendant for permission to search his automobile, defendant refused, and the county attorney and Emmons proceeded to the office of the Allen County Court where the search warrant in question was secured.

With the search warrant in hand, the sheriff and agent Emmons proceeded to search defendant's automobile. They found a billfold, containing one $100 bill and three $20 bills underneath the dash where the radio was mounted. The sheriff also found a ring of keys with six keys on it. The billfold and key ring were identified by Mrs. Wight as her husband's and she testified they were on his person when she last saw him.

Defendant was charged with first degree robbery and grand larceny. After a preliminary hearing before the county court of Allen County, defendant was bound over for trial to the district court on the grand larceny charge. The county court found the evidence insufficient to bind defendant over on first degree robbery.

At the preliminary hearing, and later at the trial, defendant's counsel objected to the admission of the billfold and key ring into evidence. Defendant also filed a motion to suppress evidence prior to trial. The objections and motions of defendant were overruled. In each instance defendant contended the evidence was inadmissible because it was seized in a search authorized by an illegally issued search warrant.

After defendant refused permission to search his automobile, on the afternoon of January 9, 1967, the county attorney prepared an affidavit in which he stated:

"That he has just and reasonable grounds to believe, and does believe that a firearm which was the instrumentality of the crime of assault with a deadly weapon, and money and other property which was the fruits of the crime of larceny and/or armed robbery, committed within Allen County, Kansas, are being unlawfully possessed and concealed with a certain motor vehicle, to-wit:

"One 1949 model Oldsmobile sedan, bearing 1966 Kansas license number AL-3919, belonging to one Herbert Aten."

The record discloses the affidavit was presented to the county court of Allen County, and at the same time the county attorney orally testified in considerable detail as to other facts within his

knowledge. After hearing the testimony of the county attorney, the court ordered him to make and file a supplemental affidavit setting out his oral testimony.

Omitting formalities, the supplemental affidavit recites the following:

"I, Mitchell H. Bushey, being duly sworn upon oath, says:

"1. That he is the person who made the complaint and affidavit filed herein.

"2. That at the time of the hearing upon said complaint for search warrant and affidavit, he testified orally before the above entitled court as to his reasons for having reasonable grounds to believe that a firearm which was the instrumentality of the crime of assault with a deadly weapon, and that money and other property which was the fruits of the crime of larceny and/or armed robbery, were being unlawfully possessed and concealed by the defendant, Herbert Walter Aten, in the 1949 model vehicle described in said complaint for search warrant.

"3. That he testified to the following facts:

"(a) That Herbert Walter Aten was observed by several witnesses who stated to this affiant that they had discovered the defendant watching the pool hall which was owned and the place of business of Kenneth H. Wight, who had disappeared on the 21st day of December, 1966, and has never been heard from or observed by anyone since that date.

"(b) That Herbert Walter Aten is known to have had, and admitted to this affiant that he had possessed a rifle of the same caliber to that of certain shells found near the car of Kenneth Wight, and that said shells are believed to have been fired shortly before Mr. Wight's disappearance. That there are bullet marks on Mr. Wight's car which were believed to be made by the bullets fired from said gun.

"(c) Statement of one Vernie Diehl that Herbert Walter Aten is known to have had no money on December 22, 1966, and that he at that time borrowed $1.00 from Mr. Diehl.

"(d) That at the time of Kenneth Wight's disappearance, he was known by his wife to have had between Six Hundred ($600.00) and Eight Hundred ($800.00) Dollars in his possession, carrying several One Hundred ($100.00) Dollar bills and several Fifty ($50.00) Dollar bills.

"(e) Herbert Walter Aten is known to have left Iola for an undisclosed destination on December 22, 1966, between the hours of 1:00 and 2:00 o'clock in the afternoon of that date. This information was disclosed by the statement of Aten to this affiant and by the statement of Aten's mother to the Chief of Police, Everett Shepherd.

"(f) On questioning the defendant by this affiant on January 9, 1967, at approximately 5:30 P. M. before the issuance of the search warrant in this matter, Aten showed this affiant a One Hundred ($100.00) Dollar bill and a Fifty ($50.00) Dollar bill which was in his possession in his billfold. Aten was unable to give a satisfactory explantion as to how he came into the possession of these bills.

"4. This affidavit is being made and filed as a supplemental to the complaint for search warrant in accordance with the order of said Court and

contains information which was testified to orally before said Court before the issuance of the search warrant.

"Further affiant sayeth not."

The accuracy of the supplemental affidavit, in reciting the county attorney's oral testimony, was not attacked in proceedings below nor is it challenged on this ground on appeal.

Procedure for the issuance of a search warrant is set out in K. S. A. 62-1828 to 62-1832. K. S. A. 62-1830 provides in part as follows:

"A warrant shall issue upon affidavit or upon *oral testimony* given under oath and recorded before the magistrate or judge. If the magistrate or judge is satisfied that there is probable cause for the issuance of a warrant, he shall issue such warrant describing the property to be searched for and seized and naming or describing the person, place or means of conveyance to be searched. . . ." (Emphasis supplied.)

The record discloses the county attorney appeared before the county court at 5:30 in the evening. Apparently no reporter was present or available to record the oral testimony given. This circumstance necessitated the county court's order that the county attorney reduce his oral testimony to writing in the form of the supplemental affidavit. Accordingly, this was done and, since no challenge is made as to the accuracy of the supplemental affidavit, we believe the provisions of 62-1830, *supra*, were substantially complied with as to form.

We turn next to defendant's argument that the county attorney's affidavit and oral testimony failed to establish a sufficient factual basis for the issuance of a search warrant.

While some of the county attorney's testimony stems from hearsay and circumstances, he explicitly recites that defendant had large bills, without a reasonable explanation for the possession thereof; that Wight had large bills when last seen; that defendant had a rifle of the same caliber as shells found near Wight's car; and that defendant had borrowed $1.00 from Diehl on December 22, 1966, indicating he had no money at the time.

The testimony discloses considerable more than bald conclusions and mere suspicion on the part of the county attorney.

The record discloses the county court carefully considered the county attorney's affidavit and oral testimony and arrived at its own determination of probable cause rather than acting as a mere rubber stamp for the police.

In the recent case of *State v. Hart*, 200 Kan. 153, 434 P. 2d 999, this court recognized that the standards for obtaining a search

warrant under the Fourth Amendment to the Constitution of the United States are enforced against the states through the Fourteenth Amendment in accordance with several decisions of the Supreme Court of the United States. In considering federal decisions on the point we stated in *State v. Hart*, supra:

"We are mindful of what has been said in *Nathanson v. United States*, 290 U. S. 41, 78 L. Ed. 159, 54 S. Ct. 11; *Giordenello v. United States*, 357 U. S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245; and *Aguilar v. Texas*, 378 U. S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; and we recognize the precedent established by those cases. The import of those decisions, as we read them, is that before a search warrant may validly be issued, there must have been placed before the issuing magistrate sufficient facts to enable him to make an intelligent and independent determination that probable cause exists; that bald conclusions or mere affirmations of belief or suspicion are not enough; and while an affidavit may be based on hearsay, there must be sufficient affirmative allegations as to the affiant's personal knowledge or his knowledge concerning his informant, or as to the informant's personal knowledge of the things about which the informant spoke, to provide a rational basis upon which the magistrate can make a judicious determination of probable cause." (p. 162.)

Further in the opinion we said:

"It is true the affidavit contained other allegations, based on information and belief, and it may be that these allegations would not satisfy the test which has been laid down. However, it has not been held, to our knowledge, that the affidavit must pinpoint every source of an affiant's belief, so long as it discloses a sufficient basis on which a finding of probable cause can be made." (p. 163.)

We believe the testimony of the county attorney sufficiently informed the county court of the underlying circumstances upon which his conclusions were based and that his conclusions, together with his positive averments, constituted a sufficient basis upon which the county court could make a judicious finding of probable cause.

Since the search warrant was lawfully issued, the sheriff's seizure of the billfold and key ring was lawful and the admission thereof into evidence was not erroneous.

Defendant next specifies as errors the county court's order binding him over for trial and the district court's refusal to discharge him at the close of the state's evidence. The state contends any deficiency with respect to his preliminary hearing was waived by defendant when he proceeded to waive arrignment and enter a plea of not guilty before the matter was raised in district court. Since defendant supports both specifications by arguing insufficiency

of the evidence, which was essentially the same at both the preliminary hearing and the trial, we shall consider the points in conjunction.

In essence defendant argues that the state failed to prove the corpus delicti in larceny and therefore, no inference of guilt may be drawn from defendant's unexplained possession of the billfold and key ring.

The corpus deliciti in larceny is constituted of two elements: (1) that the property was lost by the owner; and (2) that it was lost by a felonious taking. (32 Am. Jur., Larceny, § 121, p. 1033.)

In most jurisdictions the elements of the corpus delicti in larceny may be established by circumstantial evidence. (52A C. J. S., Larceny, § 129 [5], pp. 655, 656; 32 Am. Jur., Larceny, § 136, pp. 1046, 1047.)

In the early Kansas case of *State v. Winner*, 17 Kan. 298, we find the following:

". . . In a criminal case, and even in murder in the first degree, the *corpus delicti* may be proved by circumstantial evidence. . . ." (p. 305.)

The rule quoted above was most recently recognized in *State v. Doyle*, 201 Kan. 469, 441 P. 2d 846.

The question presented requires a review of the circumstantial evidence upon which the state made its case.

Mrs. Wight's testimony established that Wight operated a pool hall, that they did not have any particular financial worries nor had any family quarrels. Wight left home on the morning of December 21, 1966, taking a bank deposit with him to go to the Allen County Bank; he stated he was going Christmas shopping, and asked her what she wanted for Christmas. Wight habitually carried the billfold in his left hip pocket, with the pocket buttoned, that he never carried less than $500, normally in denominations of $100 and $50 bills. Mrs. Wight identified each key and testified the key ring was positively on Wight's person when he left home.

Kenneth Daniels, an appliance store employee, testified that Wight came into the store the morning of December 21, looked at color television sets and said he wanted to buy one for a Christmas present.

Ray Emmons, a special agent for the Kansas Bureau of Investigation, testified that he had been looking for defendant since December 22, 1966. Emmons recounted the interrogation of defendant, which

took place in the county attorney's office the afternoon of January 9, 1967.

Emmons' testimony is further narrated:

". . .; that he asked the Defendant if he had any money on him and the Defendant pulled out his billfold and showed him a $100.00 bill and a $50.00 bill and some twenties and tens; that the Defendant was asked where he got this and he stated he had worked at a salvage yard, that he had been junking and earned it; later the Defendant stated that he won the $100.00 bill in crap game; that later the Defendant stated he had earned the money working at a salvage yard and earned junk working at a salvage yard and sold it to a man who came along in a truck; Mr. Emmons testified that he asked the Defendant if the Defendant would give him permission to search his car and the Defendant refused to allow a search of his car."

Emmons further testified that he assisted the sheriff in searching the car and found the billfold containing one $100 bill and three $20 bills and saw the sheriff take a key ring with six keys from under the dash.

Vernie Diehl stated defendant borrowed one dollar from him on December 22, 1966.

Twenty days after the disappearance of Wight, defendant was found with a substantial sum in large bills on his person with an unsatisfactory explanation as to either his acquisition of the money or his whereabouts during the twenty day period. Wight's billfold containing $160 in bills and his key ring were found hidden in defendant's automobile. All identification had been removed from the billfold. Defendant offered no explanation of the presence of the billfold or key ring in his automobile. No evidence appears indicating that Wight voluntarily parted with his billfold and key ring, which showed up in a place where it could well be inferred he would not have placed them. There is no pretense anywhere in the record that Wight consented to a taking of his property.

The want of consent of the owner to the taking of his property may be proved by circumstantial evidence when, without fault on the part of the state, direct testimony cannot be produced. (52 A C. J. S., Larceny, § 135, p. 671.)

The state's evidence discloses the billfold and key ring were well hidden in defendant's automobile. Defendant merely disclaimed any knowledge thereof; he made no suggestion that any one else had possession of his automobile or an opportunity to hide the billfold and key ring.

In a prosecution for larceny the felonious intent may be shown

by evidence that the accused concealed the property or denied having possession of it. (52A C. J. S., Larceny, § 136[2]b, p. 675.)

The evidence here reveals a marked change in the financial condition of defendant since the disappearance of Wight with only a very doubtful explanation, a circumstance which the jury has a right to consider. (*State v. Grebe*, 17 Kan. 458.)

When evidence against the accused is largely circumstantial, evidence that the accused was in need of money, prior to the larceny, and that he possessed money shortly after the alleged theft, is admissible. (52A C. J. S., Larceny, § 124, p. 628.)

We believe the appearance of Wight's billfold and key ring in defendant's automobile, with no explanation offered, and the possession of large bills on his person with only a very doubtful explanation for their acquisition, together with other circumstances related, is sufficient to warrant submission to the jury the questions whether or not the items were stolen and, if stolen, were found in the possession of defendant recently thereafter, and if so found, are they now explained or unexplained by defendant.

*State v. Kagi*, 105 Kan. 536, 185 Pac. 62, dealt with a similar question—whether property found in possession of the accused was stolen property. On review after a conviction an instruction, which reads in pertinent part as follows:

" '. . . In this case, it is for the jury to say from the testimony, First, whether the personal property described in the information was stolen, and if it was stolen, was it found in the possession of the defendant recently thereafter, and if it was so found, is it now explained or unexplained by the defendant.' " (p. 539.)

was held to state the applicable rule of evidence fairly, both to appellant and the state.

We are mindful of the duty of this court in a circumstantial evidence case to determine whether there is a basis in the evidence for a reasonable inference of the defendant's guilt. (*State v. Doyle,* supra; *State v. Patterson,* 200 Kan. 176, 434 P. 2d 808.) The jury is the exclusive judge of all material questions of fact but the law requires that the court determine the question whether there was present any evidence whatever of a particular fact. (*State v. Doyle,* supra; *State v. Jensen,* 197 Kan. 427, 417 P. 2d 273.)

From our consideration of the evidence produced by the state, we believe an inference may fairly be drawn establishing the elements of larceny. When such is the case it is the function of the

jury, not this court on review, to weigh the evidence and pass upon the credibility of witnesses.

The rule concerning the sufficiency of circumstantial evidence on appellate review was discussed in the recent case of *State v. Nicolay,* 202 Kan. 209, 447 P. 2d 403, where we held:

"When considering the sufficiency of circumstantial evidence to sustain a conviction of crime, the question before this court on appeal is not whether the evidence is incompatible with any reasonable hypothesis except guilt, which is a jury question, but the function of this court is limited to ascertaining whether there was a basis in the evidence for a reasonable inference of guilt." (Syl. ¶ 2.)

In the instant case, the jury by its verdict found the property of Wight was stolen and found in the unexplained possession of defendant.

After his motion for discharge was overruled, defendant took the witness stand. He testified he left Iola on December 22, 1966, in order to buy and sell junk, that he went to Chanute, Independence, Parsons and Pittsburg. On cross-examination he admitted registering in a Parsons Hotel under an assumed name and could give no particular reason for so doing. Defendant attempted to explain his possession of the $100 bill. He stated he won it in a "crap" game back of a filling station in Pittsburg. He did not know the date, the name or location of the filling station, the names of any of the operators or employees, nor the names of any persons in the "crap" game.

Defendant further testified he knew nothing of Wight's disappearance and that he had never seen the billfold or key ring until shown to him in the county attorney's office.

The verdict indicates defendant's claimed lack of knowledge of the presence of the billfold and key ring in his car and his explanation of how he accumulated the funds found in his possession did not appear reasonable to the mind and conscience of the jury. Under these circumstances the verdict must stand. (*State v. Satterfield,* 202 Kan. 395, 449 P. 2d 566; *State v. Brizendine,* 114 Kan. 699, 220 Pac. 174.)

The record shows the trial court carefully reviewed the evidence when overruling defendant's motion for discharge and again when denying his motion for a new trial. For the reasons stated, we find no error in either ruling.

The judgment is affirmed.