No. 30,928.

The State of Kansas, *Appellee*, v. John W. Kemp, *Appellant*.

(20 P. 2d 499.)

Opinion filed April 8, 1933.

*J. H. Brady* and *N. E. Snyder,* both of Kansas City, for the appellant.

*Roland Boynton,* attorney-general, *Everett E. Steerman,* assistant attorney-general, *Frederick R. White,* county attorney, and *Lee E. Weeks,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

Burch, J.:   John W. Kemp was convicted of perjury, and appeals.

Kemp gave a note, to which a coupon was attached, to the Bankers Mortgage Company for borrowed money and secured the note

by real-estate mortgage. Kemp defaulted, and an action was commenced to recover on the note and to foreclose the mortgage. Kemp filed an answer. The answer identified the note and contained affirmative statements of fact that Kemp did not sign the note, did not deliver the note, and the signature on the note was not Kemp's signature. Following these statements was a denial, which reads:

"And said defendant specifically denies that he executed and delivered said note to the plaintiff as alleged in count one of plaintiff's petition."

The same affirmative statements of fact and the same denials were made respecting the coupon and respecting the mortgage. The answer was verified as follows:

"Affidavit.

"State of Kansas, County of Wyandotte, ss:

"John W. Kemp, of lawful age, being first duly sworn, upon his oath states that he is the defendant above-named and that he has read the above and foregoing separate amended answer of John W. Kemp and that the statements, facts and denials set forth therein are true according to his best knowledge and belief.                    (Signed)    John W. Kemp.

"Subscribed and sworn to before me this 20th day of June, 1929.

"(Seal.)                (Signed)    C. E. Williamson, Notary Public.

"My commission expires January 19, 1931."

The notary was a witness at the trial. He testified that Kemp brought the answer to him and signed the answer and the affidavit in his presence. The notary then testified as follows:

"Q. Now after having seen him sign on page 3, what, if anything, did you do as a notary public, Mr. Williamson? A. I acknowledged his signature.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. What, if anything, did you request Mr. Kemp to do with reference to acknowledging that instrument? A. I asked him if that was his free act and deed.

"Q. You did? A. Yes.

"Q. Did you ask him anything more? A. Not that I remember of. No, I don't remember of asking him anything more.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Then what did you do with reference to the instrument, Mr. Williamson? A. I signed it and put my seal on it and expiration date as notary."

Defendant contends there was no proof an oath was administered. The perjury statute reads:

"Every person who shall willfully and corruptly swear, testify or affirm falsely to any material matter, upon any oath or affirmation or declaration legally administered in any cause, matter or proceeding before any court,

tribunal or public body or officer, shall be deemed guilty of perjury." (R. S. 21-701.)

The statute relating to oaths reads:

"All oaths shall be administered by laying the right hand upon the holy Bible, or by the uplifted right hand." (R. S. 54-102.)

"All oaths shall commence and conclude as follows: 'You do solemnly swear,' etc.; 'So help you God.' . . ." (R. S. 54-104.)

The statute relating to verification of pleadings reads:

"The affidavit verifying pleadings may be made before any notary public or other officer authorized generally to administer oaths, and must be signed by the party making the same; and the officer before whom the same was taken shall certify that it was sworn to or affirmed before him and signed in his presence. The certificate of such officer, signed officially by him, shall be evidence that the affidavit was duly made; that the name of the officer was written by himself and that he was such officer." (R. S. 60-734.)

There are numerous decisions by able courts which support defendant's contention there was no proof an oath was administered. There are other decisions with which this court is more in accord.

It was a question of fact whether Kemp swore on oath legally administered. The notary who officiated in the proceeding identified his certificate and told what occurred. His testimony respecting what occurred showed none of the statutory requirements relating to administration of an oath were observed. But there was the notary's certificate. The statute says the certificate was evidence the affidavit was duly made. In his brief Kemp discusses presumptions, which Dean Wigmore called artificial rules which stand in place of proof until the contrary is shown, and which the supreme court of Missouri called bats of the law flitting in the twilight but disappearing in the sunshine of actual evidence. We have no presumption here. We have the notary's written statement under signature and seal, made at the time. Under the sunshine of the statute it has the radiance of actual fact. We have the notary's oral statement. It flits in the twilight of memory of things two and a half years old. The jury could believe either.

Besides what has been said, Kemp went to the notary with a blank form to be made into an affidavit with a certificate that the formalities of a solemn ceremony had been observed. The purpose was to verify an answer to be filed in court, verification being necessary properly to raise the issue which the answer purported to raise. The notary had before him the certificate to be executed,

which if executed would declare Kemp was sworn. The notary executed the certificate. Manifestly, both parties intended that out of Kemp's visit to the notary there should come what would have the effect of administration of an oath; and the court holds that in the absence of clear proof the ceremony, or lack of ceremony, was designed by the participants to leave Kemp unsworn, the legal effect of what occurred was the same as if Kemp was sworn according to formalities prescribed for administration of an oath. (*State v. Madigan,* 57 Minn. 425; *Atwood v. State,* 146 Miss. 662; *Komp v. State,* 129 Wis. 20.)

Kemp contends that if there was an oath it was not one authorized by statute in that it concluded with "according to his best knowledge and belief." The statute relating to verification of pleadings reads:

"The affidavit shall be sufficient if it state that the affiant believes the facts stated in the pleading to be true." (R. S. 60-732.)

Kemp could have no better belief than his best belief, and the affidavit was equivalent in meaning to a statement he believed the facts stated in the pleading to be true.

The information did not specifically allege in set phrase that Kemp swore falsely. The criminal code requires that the information shall be direct and certain with respect to the offense charged. (R. S. 62-1005.)

The essence of the crime of perjury is that the person charged swore falsely, and it is passing strange that a prosecuting officer, with the statute before him, should omit direct allegation of falsity from the information. However, the information charged that Kemp did unlawfully, willfully, feloniously and corruptly swear on oath, legally administered, the statements, facts and denials contained in the answer were true well knowing they were false and untrue and that Kemp made the allegations under oath with intent to deceive and mislead. In this instance, the criminal code itself has forbidden resort to the technicalities of common law pleading in perjury cases.

"The indictment or information is sufficient if it appear therefrom—

". . . Fourth. That the offense charged is clearly set forth, in plain and concise language, without repetition. And,

"Fifth. That the offense charged is stated with such a degree of certainty that the court may pronounce judgment upon conviction, according to the right of the case." (R. S. 62-1010.)

"No indictment or information may be quashed or set aside for any of the following defects:

". . . Seventh. For any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." (R. S. 62-1011.)

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (R. S. 62-1718.)

It is not open to dispute that Kemp knew he was charged with perjury in a matter clearly pleaded; that the trial court could pronounce judgment according to the right of the case; and that the imperfection in the information did not tend to prejudice Kemp's substantial rights. The same provisions of the criminal code nullify the common-law rule that besides showing falsity of what was sworn to, the pleading should go on and tell antithetically what the truth was. The whole purpose of the section of the bill of rights which requires that the defendant shall be allowed to demand the nature and cause of the accusation against him (§ 10) is subserved when the information discloses that he swore falsely.

Defendant contends the oath was not material because the answer raised no issue. The answer contained a general denial. The answer also contained the specific denials referred to above. The brief says each specific denial is a negative pregnant. Therefore, only the general denial was left to raise an issue. As indicated above, the answer contained affirmative statements of fact that defendant did not sign, that the signatures were not his, and that he did not deliver. The verification was that the "statements, facts" and denials set forth in the answer were true. Why the affirmative statements in the answer should be ignored is not apparent.

There is nothing else of importance in the case, and the judgment of the district court is affirmed.