No. 77,177

ARLENE EVELEIGH, County Commissioner of Trego County, *Appellant*, v. KATHLEEN CONNESS, Trego County Clerk, Trego County, Kansas, *Appellee.*

933 P.2d 675

Opinion filed March 7, 1997.

*Allen Shelton*, of Shelton Law Firm, P.A., of Oberlin, argued the cause, and *Tony A. Potter*, of Hill City, was with him on the brief for appellant.

*Allen G. Glendenning*, of Watkins, Calcara, Rondeau, Friedeman, Bleeker, Glendenning & McVay, Chtd., of Great Bend, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: A recall petition was filed against Arlene Eveleigh, First District County Commissioner of Trego County. K.S.A. 25-4325 requires that "each petition [before being filed] shall be certified by an affidavit by the sponsor who personally circulated the petition." Eveleigh sought to enjoin recall based upon her claim that the petition was not certified by affidavit. She appeals the district court's determination that the petition was legally sufficient. We affirm.

On February 20, 1996, a petition for recall of Eveleigh was filed with Trego County Clerk and Election Officer Kathleen Conness. Eveleigh is a local officer, defined by law as one of those elected public officials who are to be elected at an election conducted by one or more county election officers. K.S.A. 25-4304(c). Statutory grounds for the recall of a local official include the "conviction of a felony, misconduct in office, incompetence or failure to perform duties prescribed by law." K.S.A. 25-4302. Procedures for the re-

call of local officers is set forth in K.S.A. 25-4318 through K.S.A. 25-4331.

The recall of a local officer is begun by filing a petition with the county election officer of the county in which all or the greater part of the population of the election district of the local officer is located. K.S.A. 25-4318. The petition for the recall shall by law include:

"(1) The name and office of the local officer sought to be recalled; (2) the grounds for recall described in particular in not more than 200 words; (3) a statement that the petitioners are registered electors of the election district of the local officer sought to be recalled; (4) the names and addresses of three registered electors of the election district of the officer sought to be recalled who shall compromise the recall committee; (5) the statement of warning required in K.S.A. 25-4321, and amendments thereto [that to sign someone else's name to the petition or to sign twice is a misdemeanor]; and (6) a statement that a list of all sponsors authorized to circulate the recall petitions for such recall may be examined in the office of the county election officer where the petition is required to be filed. Each sponsor shall be a registered elector of the election district of the local officer sought to be recalled and of the county in which such sponsor circulates the petition.

"(b) Each page of a petition for recall of a local officer shall be in substantially the following form:

I, the undersigned, hereby seek the recall of _____ from the office of _____, on the ground(s) that _____,

(state specific grounds)

and declare that I am a registered elector of _____ County, Kansas, and of the election district of the officer named above.

| Name of Signer | Street Number or RR (as Registered) | Name of City | Date of Signing |
|---|---|---|---|
| | | | |
| | | | |

**NOTE:**

1. It is a class B misdemeanor to sign a name other than your own to this petition, to knowingly sign more than once for the recall of the same officer at the same election or to sign this petition knowing you are not a registered elector.
2. The following comprise the recall committee:
   (names and resident addresses)
3. A list of all sponsors authorized to circulate petitions for this recall may be examined in the office of the _____ County election officer.

"(c) A county election officer shall provide a sample of the form prescribed by subsection (b) upon request by any person.

"(d) The affidavit required by K.S.A. 25-4325, and amendments thereto, shall be appended to each petition for recall of a local officer." K.S.A. 25-4320.

After filing has been completed, the county election officer determines the sufficiency of the recall petition, K.S.A. 25-4326, and the county attorney determines that the grounds contained in the recall petition are sufficient. K.S.A. 25-4302. At this point, a recall election is normally scheduled in accord with K.S.A. 25-4328 through K.S.A. 25-4330. However, any aggrieved person is given 30 days to file an action to have the determination of the county election officer or county attorney reviewed in the district court of such county. K.S.A. 25-4331.

In the present case, seven identical petitions for recall were circulated by local sponsors supporting the recall of Eveleigh. The sponsors of the petitions followed all of the above requirements and filed the completed recall petitions with the county election officer. Along with the petitions for recall, each sponsor signed a document entitled "Affidavit of Legal Sponsorship for the Recall Petition Circulated to Recall Arlene Eveleigh." Each sponsor signed the affidavit before the Trego County Clerk, Kathleen Conness, who notarized, accepted, and filed the recall petitions in her capacity as election officer.

Eveleigh filed a petition with the Trego County District Court to challenge Conness' finding that the recall petitions were sufficient and to enjoin Conness from proceeding with the recall. She alleged that the recall petitions were not certified by an affidavit as required by K.S.A. 25-4325. After a full hearing, the district court concluded that an affidavit had been given under penalty of perjury and declared the recall petitions to be sufficient. The matter has been stayed pending appeal. We transferred this case from the Court of Appeals pursuant to K.S.A. 20-3018(c).

The Kansas Constitution grants citizen voters of this state the right to recall elected public officials by providing in Article 4, § 3: "All elected public officials in the state, except judicial officers, shall be subject to recall by voters of the state or political subdivision from which elected. Procedures and grounds for recall shall be prescribed by law."

The Kansas Legislature has enacted laws governing the recall of public officials. Eveleigh takes no issue with the county attorney's determination concerning the grounds for recall, nor does Eveleigh contend that any provisions of the law for the recall of local officers was violated except the provisions requiring that the sponsors certify the petition by an affidavit before filing. K.S.A. 25-4325 provides in part:

*"Before being filed, each petition shall be certified by an affidavit by the sponsor who personally circulated the petition.* The affidavit shall state in substance that (a) the person signing the affidavit is a sponsor, (b) the person is the only circulator of that petition or copy, (c) the signatures were made in such person's actual presence, (d) to the best of such person's knowledge, the signatures are those of the persons whose names they purport to be, (e) the person circulated the petition in the manner provided by this act *and (f) the person signing the affidavit, being duly sworn, on oath states that the statements of grounds for recall contained in the recall petition are true."* (Emphasis added.)

The contents of the affidavit contested by Eveleigh, set forth in full below, track the language in the K.S.A. 25-4325:

"Affidavit of Legal Sponsorship for the Recall
Petition Circulated to Recall Arlene Eveleigh,
First District County Commissioner, Trego County, Kansas

"I, the signer of this affidavit, am a sponsor for the petition seeking the recall of Arlene Eveleigh, First District County Commissioner, Trego County, Kansas. I testify that I am the only circulator of the petition to which this affidavit is attached, that the signatures on the petition were made in my actual presence, that, to the best of my knowledge, the signatures on the petition are those of the persons whose names they purport to be and that I circulated the petition in the manner prescribed by law. *I, being duly sworn, on oath state that the statements of grounds for recall contained in the recall petition are true.*

"In testimony whereof, I have hereunto set my name this 20th day of February, 1996.

"James Kohl
"Signature of Sponsor

"James Kohl
"Printed Name of Sponsor

"State of Kansas, County of Trego:

"Personally appeared before me, a Notary Public and County Election Officer, in and for such County and State, the above named, who is personally known to

me to be the same person who executed the foregoing instrument in writing, *and duly acknowledged the execution of the same.*

"In witness whereof, I have hereunto set my hand and seal this 20th day of February, 1996

"My Appointment Expires: <u>official</u>     Kathleen Conness
                                        ·Notary Public/
                                        Authorized Officer" (Emphasis added.)

Eveleigh argues that the above document is not an affidavit primarily because it lacks a jurat and also because the sponsor's statements do not indicate that the sponsor swore to the content of the statements. The question of whether the document constitutes an affidavit is normally a question of law over which our review is unlimited. See *Gillespie v. Seymour,* 250 Kan. 123, 129, 938 P.2d 782 (1991). However, the trial court in this case elected to hear evidence concerning the question of whether the document constituted an affidavit.

Eveleigh contends that the trial court erred in taking testimony on this issue. She cites no authority for her contention. Kansas law clearly provides a basis for hearing such evidence where the document alleged to be an affidavit is not clear on its face. See, *e.g.,* *State v. Anderson,* 178 Kan. 322, 285 P.2d 1073 (1955) (whether affidavit was sworn to as basis of perjury charge); *Dewey v. Kansas Dept. of Revenue,* 11 Kan. App. 2d 72, 713 P.2d 490 (1986) (validity of a verification for prosecution· of driver's license suspension); *State v. Journey,* 1 Kan. App. 2d 150, 562 P.2d 138 (1977) (validity of affidavit supporting search warrant). As we will discuss further, this evidence is crucial in a case where the document in question lacks a jurat. An exception is found in the context of mechanics' liens. The validity of a mechanic's lien affidavit must be ascertained in its entirety from its four corners. *Trane Co. v. Bakkalapulo,* 234 Kan. 348, Syl. ¶ 3, 672 P.2d 586 (1983).

Acknowledging that the document did not contain a jurat, the trial court focused upon the actions and statements of the sponsors at the time they signed the document. Evidence considered by the trial court included the testimony of two sponsors as representative of all sponsors and testimony of the county· election officer, Con-

ness. Elmer Schlegel, one of the sponsors who prepared and signed the affidavit, testified:

"I prepared the affidavit in the same way that I prepared the petition itself and the list of sponsors and the list of the recall committee. We got a copy of the statute that pertains to recall of elected officials. I reviewed it with one other member of the recall committee. Then I proceeded to take the statute and essentially, word for word, copy what the statute said it had to have on it for the petition, with the exception, of course, that the names, Trego county and so forth, that are specific to this case.

"And with regard to the affidavit, again, if you look at the statute, I forget the statute number, but I think you were quoting it, or the Plaintiff was quoting it, it lists requirements ABCDE and F, I think, that need to be listed on that affidavit. We listed those on the affidavit, and I think the part (f) says that at that point you also must state that under oath you testify that the grounds for this be true. We did that.

"When we went to the clerk's office with that affidavit, we, in fact, all thought that that was the oath that should be administered, and, in fact, that was the oath that the clerk did administer, and we did raise our right hands. She asked us to state what was on the affidavit. We took that oath, and after completing that, we, one by one, filed up to the desk and signed our names as she asked us to sign them and she notarized for each one of us individually that we had, in fact, read the oath, taken the oath, and that was it."

In addition, Jim Kohl, another sponsor, testified that all sponsors raised their right hands and, at the request of the election officer, "read what was on the affidavit, we perceived that to be an oath, and then we signed the oath after reading it aloud, and I believe Kathleen [Conness] notarized it."

Finally, the court heard testimony from Conness, who corroborated the above testimony. "[T]hey told me they were there to bring in the petitions to me to qualify, and I asked them to all read that affidavit, and then they signed it and I witnessed their signature." However, she testified that she did not place any of the sponsors under oath and confirmed that she acknowledged but did not verify the sponsors' signatures.

After reviewing the file and hearing statements of counsel and the testimony, the court determined:

"[T]he weight of the testimony today, although it was somewhat conflicting, is that the seven people did appear before a person duly authorized to administer oaths in the state of Kansas, raised their right hands, apparently thinking that they

were under oath, made a statement in reading from the petition that being under oath, that being duly sworn on oath state that the statements, et cetera.

"So I think the weight of the evidence before the Court today is that the seven people did appear, thinking, in fact, that they were under oath, and were making their statements under oath, and based upon those findings, I think it's incumbent upon the Court at this time to find that the petitions are, in fact, sufficient."

The question presented for our review is a mixed question of fact and law. The standard we apply is as follows:

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

In some respects, we have a question of first impression to resolve under the recall statutes of Kansas. However, in other respects this is not a case of first impression because we have several Kansas appellate decisions defining and discussing affidavits. In addition to the document itself, we have testimony from all parties concerned about the facts and circumstances surrounding the signing of the document. The ultimate question we must resolve is whether the actions of the sponsors under the facts of this case constitute sufficient compliance with K.S.A. 25-4325.

We must be mindful that we deal with the interpretation of a recall statute, involving the exercise of a fundamental right reserved to the citizens of this state by the Kansas Constitution. We have said:

"Where a state constitutional provision provides for the recall of public officials, recall is viewed as a fundamental right which the people have reserved to themselves. When the power of recall is a fundamental right, statutes governing the exercise of the power are to be liberally construed in favor of the ability to exercise it, and any limitations on that power must be strictly construed." *Unger v. Horn,* 240 Kan. 740, 741, 732 P.2d 1275 (1987).

The true purpose of the liberal construction doctrine, as pointed out by Eveleigh, is to carry out the intention of the legislature. In

*Board of Trustees of Butler Co. Comm. College v. Board of Sedgwick Co. Comm'rs*, 257 Kan. 468, 476, 893 P. 2d 224 (1995), we said: "The function of liberal construction is called into use where there is ambiguity in the language of the statute or, in other words, where there are one or more interpretations which may fairly be made." It is also well established that the doctrine of liberal construction does not allow this court to delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one which the legislature alone can correct. *State ex rel. Stephan v. Martin*, 230 Kan 747, 752-53, 641 P.2d 1011 (1982).

Eveleigh's first and primary argument is that the document is acknowledged by the election officer, Conness, and does not contain a jurat. Black's Law Dictionary 852 (6th ed. 1990) defines "jurat" as:

"Certificate of officer or person before whom writing was sworn to. In common use term is employed to designate certificate of competent administering officer that writing was sworn to by person who signed it. The clause written at the foot of an affidavit stating when, where, and before whom such affidavit was sworn."

Eveleigh's contention that the challenged document contains no jurat is correct. If we had only the document itself with no other testimony or evidence, our decision in the case of *State v. Knight*, 219 Kan. 863, 549 P.2d 1397 (1976), would seem to call for reversal of the trial court's decision.

In *Knight*, which Eveleigh relies upon, the defendant filed a motion for change of judge. The relevant statute required an affidavit alleging grounds for the change. We defined affidavit as "a written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation." 219 Kan. at 867. However, in *Knight*, we found that the defendant's document was not an oath because the document was simply acknowledged before a notary public. "*Since it is essential to the validity of an affidavit that it be sworn or affirmed before some person, the requirements for an affidavit are not met.*" 219 Kan. at 867. Since the defendant's motion lacked an affidavit, the motion was insufficient and failed. 219 Kan. at 868.

Not unlike *Knight*, the questioned document we now examine was acknowledged and does not contain a statement that it was sworn to before some person. However, unlike *Knight*, we not only have the document but we also have detailed evidence of the circumstances surrounding the signing of the document. The evidence establishes that all sponsors met at the courthouse and appeared before the county election officer. She required the sponsors to recite verbatim from the written document. The sponsors, during this reading, had their right hands raised. The election officer is a person authorized by law to administer an oath, but she did not administer an oath to the sponsors. After the reading, each sponsor signed the document, and the election officer acknowledged the signatures.

In evaluating this evidence, the trial court focused on the actions of the sponsors who signed the document and the question of whether the sponsors swore to the contents of the affidavit as required by K.S.A. 25-4325. On the other hand, Eveleigh's main focus is on the actions of the election officer, Conness, and the fact that she only acknowledged the sponsors' signatures and did not place them under oath. We believe that the trial court's focus is correct.

Most certainly, the better practice to prove a sponsor's intent to swear according to the provisions of K.S.A. 25-4325 is to provide a document containing a jurat because "the jurat imports authenticity to the item to which it is affixed." *Wilcox v. Billings*, 200 Kan. 654, 658, 438 P.2d 108 (1968). However, this court very early recognized that a jurat is not essential: "If, therefore, the jurat be missing from an affidavit, if there be no proof on the face of the paper that an oath was duly administered the fact may be established by evidence *aliunde*." *James v. Logan*, 82 Kan. 285, 288, 108 Pac. 81 (1910).

In *American Home Life Ins. Co. v. Heide*, 199 Kan 652, Syl. ¶ 4, 433 P.2d 454 (1967), this court said:

"If a declaration has in fact been made under oath it is an affidavit, although no jurat be attached. The jurat is merely evidence that an oath was duly administered, and in the absence of a jurat the fact may be proved by evidence *aliunde*."

Black's Law Dictionary defines "evidence *aliunde*" as: "Evidence from outside, from another source. In certain cases a written instrument may be explained by evidence *aliunde*, that is, by evidence drawn from sources exterior to the instrument itself, *e.g.*, the testimony of a witness to conversations, admissions, or preliminary negotiations." Black's Law Dictionary 73 (6th ed. 1990).

Even without a jurat, a document may still be an affidavit. More recently in *Journey*, 1 Kan. App. 2d 150, the Court of Appeals examined the effect of a missing jurat on an affidavit for a search warrant. After citing the definition of affidavit found in *Knight*, the court stated:

"Noteworthy is the fact we have no case law requirement for any written certificate of the officer or person before whom the writing is sworn to, known as a jurat, nor is this required constitutionally or statutorily in connection with the issuance of a search warrant, as is true in some states. The omission is significant here (obviously it is the best practice to have a written record of the oath-taking and had such been done this issue in this appeal would never have arisen). 'If a declaration has in fact been made under oath it is an affidavit, although no jurat be attached. The jurat is merely evidence that an oath was duly administered, and in the absence of a jurat the fact may be proved by evidence *aliunde*' (*James v. Logan*, 82 Kan. 285, Syl. ¶ 2, 108 Pac. 81 [1910]; see also *American Home Life Ins. Co. v. Heide*, 199 Kan. 652, 655, 433 P.2d 454 [1967])." 1 Kan. App. 2d at 152.

Noting the presumption that a public officer has performed the duties of his or her office faithfully, the *Journey* court concluded that the omission of the jurat in the affidavit to obtain a search warrant did not invalidate the sworn statement. 1 Kan. App. 2d at 152.

In *State v. Kemp*, 137 Kan. 290, 20 P.2d 499 (1933), the defendant was charged with perjury. The crucial factual question was whether the defendant was sworn when he signed the statement giving rise to the charge. The defendant contended that his statement was not sworn and established that the notary "acknowledged" his signature and asked him only if he was signing it as his free act. 137 Kan. at 291. The defendant's contention that "there was no proof an oath was administered" became a question of fact for the jury to resolve. 137 Kan. at 292. The court allowed evidence *aliunde*. The State presented evidence that the intent of the defendant, in going before the notary public, was to have his state-

ment formalized as under penalty of perjury. The jury found as a matter of fact that an oath was administered, even though the defendant's signature was only acknowledged: "[I]n the absence of clear proof the ceremony, or lack of ceremony, was designed by the participants to leave Kemp unsworn, the legal effect of what occurred was the same as if Kemp was sworn according to formalities prescribed for administration of an oath." 137 Kan. at 293; see *Anderson*, 178 Kan. 322, Syl. ¶ 3.

In *State v. Seven Slot Machines*, 203 Kan. 833, 839, 457 P.2d 97 (1969), *cert. denied* 396 U.S. 1037 (1970), the defendant charged that the affidavit used to support the search warrant in that case lacked even the minimal formality or intent of an oath. Again, evidence *aliunde* was admitted. The affiant testified that he did not raise his right hand or swear before God as to the truth and contents of the affidavit. However, the affiant also testified that "when he signed the affidavit he understood he was obligated to tell the truth, and he knew that he could be penalized for perjury if he told an untruth in the statement." 203 Kan. at 839. This court, relying on the above cases of *Anderson* and *Kemp*, found the record showed a complete absence of clear proof that the ceremony or lack of ceremony was designed by the participants to leave the affiant unsworn. Thus, the affidavit was upheld. 203 Kan. at 840.

In the case we now consider, we emphasize that the answer to the question posed as to whether the contested document is an affidavit within the meaning of K.S.A. 25-4325 depends upon whether the sponsor swore to the contents of the document. We determine that there is substantial competent evidence that the intent of the sponsors and of the election officer was to formally comply with all requirements of the law relating to the recall of a local officer. Eveleigh's argument that the document contains only an acknowledgement by the election officer fails to address our main concern.

Eveleigh relies on several cases regarding mechanics' liens to assert the argument that an acknowledgement cannot serve as an oath. One such case is *D.J. Fair Lumber Co. v. Karlin*, 199 Kan. 366, 430 P.2d 222 (1967). In that case, this court examined the statutory requirement that a mechanic's lien be verified. This court

stated: "An acknowledgment shows, merely *prima facie*, that an instrument was duly executed, whereas a verification is an affidavit attached to a statement as to the truth of the matters therein set forth." 199 Kan. at 369. Based on this distinction, the *D.J. Fair* court reaffirmed a line of cases holding that a mechanic's lien was void if the lien was acknowledged but not verified. 199 Kan. at 369-71. Based on *D.J. Fair* and cases cited therein, Eveleigh contends that because Conness' statement is an acknowledgment, the document lacks evidence of a verification or oath, and the affidavit is fatal.

In a mechanic's lien case, the question of whether the statement is sworn or merely acknowledged is limited to a consideration the four corners of the document itself. This accounts for the holding in *D.J. Fair* that a verification on the document itself is necessary. The restrictions on appellate courts to consider the four corners of the document in mechanic's lien cases do not apply in this case. However, the question is the same. To make an affidavit as required by K.S.A. 25-4320, the *sponsor*, like a lienholder, must swear to the truth of his or her statement. See, *e.g., Knight,* 219 Kan. at 868. In either case, we focus on the person signing the document and ask if that person swore to the contents of the document. Conness, the election officer who acknowledged the document, is not a sponsor of the petition. She is not the party required to swear. The validity of the affidavit does not turn on whether Conness signed an acknowledgement. Eveleigh's reliance on *D.J. Fair* under the facts of this case is misplaced.

In addition to noting the lack of a jurat, Eveleigh advances several arguments that the document is not an affidavit in accord with the provisions of K.S.A. 25-4325 based on the language of the document. The document makes reference to the grounds of recall and states that the sponsor "being duly sworn, on oath" states that the grounds for recall are true. Eveleigh contends that "the other recitations required by K.S.A. 25-4325 . . . do not even purport to be sworn to, given under oath, or affirmed." The other recitations include:

"(a) the person signing the affidavit is a sponsor, (b) the person is the only circulator of that petition or copy, (c) the signatures were made in such person's

actual presence, (d) to the best of such person's knowledge, the signatures are those of the persons whose names they purport to be, and (e) the person circulated the petition in the manner provided by this act." K.S.A. 25-4325.

According to Eveleigh, the attempted oath applies only to the truth of the grounds for recall and nothing else.

The evidence establishes that the sponsors tracked the language required by K.S.A. 25-4325. The provisions of K.S.A. 25-4325(f) specifically require that "the person signing the affidavit, being duly sworn, on oath states that the statements of grounds for recall contained in the recall petition are true." Other language in the text of the document, such as the word "testify" appearing early in the document, suggest that the sponsors were attempting to comply with the affidavit requirement in K.S.A. 25-4325. Black's Law Dictionary 1476 (6th ed. 1990) defines "testify" to mean: "To bear witness; to give evidence as a witness; to make a solemn declaration, under oath or affirmation, in a judicial inquiry, for the purpose of establishing or proving some fact."

While K.S.A. 25-4325 sets forth what must be said in the affidavit, the statute specifically requires that the affiant swear or affirm that the grounds contained in the petition are true. Does this mean that the only requirement for an affidavit is that the grounds be verified? After all, this is the most important allegation of the entire process. In order to initiate a recall, one must allege sufficient grounds. Without this, there will be no recall. There is no question that the sponsor verbally swore before a person authorized to administer oaths that the grounds contained in the recall petition are true. Arguably, this swearing meets the intent of K.S.A. 25-4325.

We point out this seeming ambiguity to focus upon the principles governing the interpretation of the recall statutes. In the case of ambiguity, that is, whether the affidavit required by K.S.A. 25-4325 applies to all statements set forth therein, or whether it is sufficient if the affidavit applies only to the grounds for recall, the doctrine of liberal construction suggests that it is sufficient if the affidavit relates to the grounds only in order to protect the ability of citizens to exercise the fundamental right of recall. Thus, it is appropriate to interpret the questioned statutory requirement for

an affidavit to specifically include the need for the sponsor to swear that the grounds for recall are true but not require that all other aspects of the mechanical method of obtaining signatures and circulating the petition also be sworn to as true.

An interpretation of the statute which requires that only the grounds for recall be sworn to by the sponsors provides adequate protection to the public and this office holder. Other requirements such as that the signatures of the persons whose names appear are who they purport to be are statements that may be supported by the best of such sponsor's knowledge. The protection and integrity of the recall process are also addressed in other statutes. For example, it is necessary that prospective signers be warned and advised who the committee is and that a false signing is a crime. K.S.A. 25-4321. Also, the county attorney must determine the legal sufficiency of the grounds for recall, K.S.A. 25-4302, and the election officer must determine the sufficiency of the process. K.S.A. 25-4326. However, the grounds for recall provide the real basis for beginning the recall process. By specifically requiring the person signing such affidavit to swear that the grounds are true, the legislature insists that the process of recall will not be compromised by alleging false grounds. This interpretation affirms the right of voter citizens in this state to recall public officials—a fundamental right guaranteed by the Kansas Constitution.

The trial court heard evidence on the precise question we must resolve. Based upon its findings, it concluded that the provisions of K.S.A. 25-4325, requiring that the recall petition be certified by affidavit, had been satisfied. We believe that the trial court's finding that the written statement by the sponsor was an affidavit under oath, is supported by substantial competent evidence. Clearly, the sponsors swore to the grounds for recall in this case and arguably, as set forth above, swore to each of the provisions contained in K.S.A. 25-4325. The weight of the evidence establishes that the statement was sworn to, and that evidence is sufficient to support the legal conclusion that the petition was certified by an affidavit. Accordingly, we affirm.

Affirmed.