NOT DESIGNATED FOR PUBLICATION

No. 115,469

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ERIN M. DREILING,
*Appellee*,

v.

KYLE A. DREILING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Barton District Court; RON SVATY, judge. Opinion filed April 21, 2017. Reversed and remanded with directions.

*Donald E. Anderson II*, of Robert A. Anderson Law Office, of Ellinwood, for appellant.

*Carol M. Park*, of Schwartz & Park, L.L.P., of Hays, for appellee.

Before GREEN, P.J., STANDRIDGE and GARDNER, JJ.

*Per Curiam*: This is an appeal from a judgment of the trial court extending a protection from abuse (PFA) order for an additional 2 years under K.S.A. 2015 Supp. 60-3107(e)(2). This PFA order protected Kyle M. Dreiling's ex-wife, Erin M. Dreiling, and their two minor children. On appeal, Kyle contends that the trial court improperly failed to exercise its discretionary authority to consider his motion to exclude his minor children from the PFA order. We agree. Accordingly, we reverse and remand to the trial court with directions to exercise its discretionary authority when it considers Kyle's motion to exclude his minor children from the extended PFA order.

1

On July 14, 2014, Erin petitioned the trial court for a PFA order against Kyle to protect her and their two minor children from Kyle. Kyle was presumed to be the father of Erin's two minor children. At the PFA order extension hearing, Kyle asserted that paternity testing had established that he was the children's biological father.

In her PFA petition, Erin explained that she and Kyle had divorced in March 2014. Erin asserted that Kyle was "an addict" whose "behavior [was] getting out of control." Erin alleged that on July 4, 2014, Kyle "came onto [her] property with a gun [and was] making threats to kick [her] male friend[']s 'butt.'" Erin stated that she had to call the police to get Kyle to leave. Erin alleged that on July 7, 2014, Kyle "entered [her] home without notice [and] walked right up to [her] oldest son [] and told him the only reason [her] guy friend was there was to hurt [her] . . . ." Erin stated that this time, Kyle left upon her request. Erin further alleged that on July 13, 2014, around 1:30 or 2 a.m., Kyle banged on her windows, entered her home through a garage window, threatened to "kick [her] friend['s] 'butt' again," and broke a mason jar on the side of the house. Erin contended that the mason jar broke where her "kids walked every day." Erin stated that all that day and the next day, Kyle continuously called, leaving voice messages threatening her "guy friend," calling her "nasty names," and stating that "the only way he was going out on this one was with a bullet." Erin, however, did not allege that Kyle injured, attempted to injure, physically threatened, or sexually abused their children.

On July 14, 2014, the same day Erin filed her PFA petition, the trial court entered a temporary PFA order protecting Erin and the children. A hearing to determine if the PFA should become permanent was set for July 21, 2014. Yet, when that day arrived, no personal service had been obtained on Kyle. So, the trial court extended the temporary PFA order. Because Erin had still been unable to obtain personal service on Kyle at the next hearing on August 22, 2014, the trial court again extended the temporary PFA order. Erin eventually obtained personal service on Kyle on August 25, 2014. The summons stated that the hearing on the PFA order would be held on December 12, 2014.

Nevertheless, at the December 12, 2014, hearing, Kyle failed to appear. The trial court entered a final PFA order protecting Erin from Kyle for 1 year, meaning the PFA order would expire on December 12, 2015. The transcript of the hearing is not in the record on appeal. Yet, the final PFA order states: "The matter was heard and submitted to the court which finds that Plaintiff has proved the allegations of abuse by preponderance of the evidence as required under K.S.A. 60-3107." The order included no other information regarding why the trial court believed the PFA order should be entered against Kyle. Two days later the trial court amended the PFA order to include the children. Again, the order included no information regarding why the trial court believed the PFA order should be entered against Kyle as to either Erin or the children.

On December 7, 2015, Erin moved the trial court to extend the PFA order. Erin notified the court that she intended to move for a 2-year or longer extension under K.S.A. 2015 Supp. 60-3107(e)(2). K.S.A. 2015 Supp. 60-3107(e)(2) states that following an evidentiary hearing "the court shall extend a protective order for not less than two additional years and may extend the protective order up to the lifetime of the defendant" if the plaintiff establishes that the defendant had been convicted of a person felony against the plaintiff or someone in plaintiff's household. Because Erin recognized that the trial court could not hold a K.S.A. 2015 Supp. 60-3107(e)(2) evidentiary hearing before the expiration of the PFA order, Erin asked the trial court to temporarily grant her extension request under K.S.A. 2015 Supp. 60-3107(e)(1). K.S.A. 2015 Supp. 60-3107(e)(1) states that the court may extend a PFA order for an additional year upon plaintiff's motion. That same day, the trial court granted the 1-year PFA order extension under K.S.A. 2015 Supp. 60-3107(e)(1), noting that its order could be extended for a longer period if Erin successfully moved for a 2-year or longer extension under K.S.A. 2015 Supp. 60-3107(e)(2). This resulted in the PFA order now expiring on December 12, 2016.

On December 9, 2015, Erin formally moved to extend the PFA order for a minimum of 2 or more years under K.S.A. 2015 Supp. 60-3107(e)(2). In support of this motion, Erin alleged that Kyle had committed an aggravated burglary against her in Barton County case 14-CR-409.

Kyle answered, objecting to the extension of the PFA order under K.S.A. 2015 Supp. 60-3107(e)(2). In his response, Kyle made the following assertions: (1) that he was unable to object to the trial court's recent decision to extend the PFA order an additional year under K.S.A. 2015 Supp. 60-3107(e)(1) because he was in jail that day; (2) that since the PFA order was issued in July 2014, he had not violated the order; and (3) that Erin was using the PFA order as a way to obtain sole custody of their two minor children. At the very end of his answer, Kyle indicated that if the trial court ultimately granted Erin's minimum 2-year extension motion under K.S.A. 2015 Supp. 60-3107(e)(2), he requested that the trial court consider modifying the PFA order to exclude his minor children from the PFA protection.

On February 8, 2016, the trial court held a hearing on Erin's motion for an extension of the PFA order under K.S.A. 2015 Supp. 60-3107(e)(2). Erin reiterated that Kyle had committed an aggravated burglary against her. Kyle admitted that he had committed and had been convicted of an aggravated burglary against Erin sometime in 2014, which resulted in him being sentenced to probation. Yet, Kyle emphasized that outside of testing positive for alcohol once, he had not violated the terms of his probation.

Next, Kyle acknowledged that the trial court could extend the PFA order under K.S.A. 2015 Supp. 60-3107(e)(2) for a minimum of 2 years. Moreover, Kyle acknowledged that the trial court had the discretionary authority to extend the PFA order up to the lifetime of Kyle, but he argued that such an extension was not warranted because "there's no reason to extend it, other than the fact that [Erin] was the victim of the crime, which happened over two years ago." Then, Kyle requested that the trial court

4

"modify" the PFA order to exclude the minor children from the PFA protection. In making this argument, Kyle emphasized that he had remained drug free, had remained "out of trouble," and had passed a parenting class.

The trial court interjected, stating that it believed it had to extend the PFA order a minimum of 2 years under K.S.A. 2015 Supp. 60-3107(e)(2). The trial court emphasized that K.S.A. 2015 Supp. 60-3107(e)(2) stated that courts "shall" grant the extension of the PFA order if plaintiffs can establish that defendants committed a person felony against them. Alternatively, Kyle argued that Erin could not move for a 2-year extension under K.S.A. 2015 Supp. 60-3107(e)(2) because she had already successfully moved for an extension under K.S.A. 2015 Supp. 60-3107(e)(1). Erin responded that a 1-year extension had not yet been granted, and the trial court agreed with Erin. Kyle responded by pointing out that the trial court's December 7, 2015, journal entry stated that it had extended the PFA order for an additional year.

At this point, a conversation occurred off the record. Immediately after the parties went back on the record, the following exchange occurred:

"THE COURT: Well, here's where the Court's at. I think, based on the . . . fact that . . . the original order was for one year, and that . . . order was actually entered December 12th of '14. That would have expired in December of 2015. The motion here for . . . an additional two years, I think falls under the statute. And it says 'shall,' so I'm obligated to grant that, unless . . . the petitioner, are you wanting him not to see the children?

"[ERIN'S ATTORNEY]: That's correct Judge. . . .

"THE COURT: That's all I need to know. If you—the statute says 'shall.' And if that's what you want, I think I'm obligated to grant the order.

"[KYLE'S ATTORNEY]: Well, Your Honor, but the . . . children were not the victim of the crime. . . .

. . . .

"THE COURT: Okay. Well, based on where we're at on the statute . . . I think I'm obligated to grant-based on the way the statute reads, I'm obligated to grant the request.

"[KYLE'S ATTORNEY]: I think you can modify the request, as the children are not the victims of the—

"THE COURT: Well, I don't think I can, because I'm extending the original order. And the original order mentioned the kids. So if you want to appeal that, you can. So that's where we're at."

The trial court ruled that it would grant the extension for 2 additional years. Although the trial court did not explicitly say so at the hearing, the journal entry of the hearing stated that the new expiration date under the extension was December 12, 2017, which was 2 years from the date the original 1-year PFA order expired.

*Did the Trial Court Err by Failing to Consider Kyle's Motion to Amend the PFA Order?*

Kyle's sole argument is that K.S.A. 2015 Supp. 60-3107(f) gave the trial court discretion to modify the PFA order to exclude his minor children regardless of whether Erin and the minor children were otherwise entitled to a minimum 2-year PFA order extension under K.S.A. 2015 Supp. 60-3107(e)(2). Kyle believes that the trial court's failure to recognize this discretion was an error of law, which necessitates remanding to the trial court for a hearing on his request to modify the PFA order to exclude his minor children from the PFA order. Erin responds that Kyle's interpretation of K.S.A. 2015 Supp. 60-3107(f) ignores the plain language of K.S.A. 2015 Supp. 60-3107(e)(2).

*Standard of Review*

Clearly, Kyle's challenge requires this court to interpret the language within K.S.A. 2015 Supp. 60-3107. Statutory interpretation involves a question of law over which this court has unlimited review. *Jordan v. Jordan*, 47 Kan. App. 2d 300, 304, 274 P.3d 657 (2012). When interpreting a statute, the most fundamental rule is that the intent

6

of the legislature governs. *Jordan*, 47 Kan. App. 2d at 304. The first step to determining the intent of the legislature is to look to the plain language of the statute, giving ordinary words their ordinary meanings. *Jordan*, 47 Kan. App. 2d at 305. Moreover, whether the trial court properly applied statutory law is also a question of law over which this court has unlimited review. *Southwestern Bell Tel. Co. v. Board of Lyon County Comm'rs*, 41 Kan. App. 2d 346, 348, 202 P.3d 54 (2009).

An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court, the trial court makes an error of law, or the trial court makes an error fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). When a trial court is guided by an erroneous legal conclusion or fails to properly consider the statute in question, the trial court abuses its discretion. See *Matson v. Kansas Dept. of Corrections,* 301 Kan. 654, 656, 346 P.3d 327 (2015). Additionally, if the trial court has discretion to make a decision but fails to exercise its discretion, the trial court abuses its discretion. *State v. Brinklow*, 288 Kan. 39, 42, 200 P.3d 1225 (2009); *State v. Anderson*, 40 Kan. App. 2d 403, 407, 192 P.3d 673 (2008).

*Applicable Law*

In relevant part, K.S.A. 2015 Supp. 60-3107 states:

"(e) Subject to the provisions of subsections (b), (c) and (d), a protective order or approved consent agreement shall remain in effect until modified or dismissed by the court and shall be for a fixed period of time not to exceed one year, except as provided in subsection (e)(1) and (e)(2).

(1) Upon motion of the plaintiff, such period may be extended for one additional year.

(2) Upon verified motion of the plaintiff and after the defendant has been personally served with a copy of the motion and has had an opportunity to present evidence and cross-examine witnesses at a hearing on the motion, if the court determines

7

by a preponderance of the evidence that the defendant has violated a valid protection order or (A) has previously violated a valid protection order, or (B) *has been convicted of a person felony* or any conspiracy, criminal solicitation or attempt thereof, under the laws of Kansas or the laws of any other jurisdiction which are substantially similar to such person felony, *committed against the plaintiff* or any member of the plaintiff's household, the court *shall* extend a protective order for not less than two additional years and may extend the protective order up to the lifetime of the defendant. No service fee shall be required for a motion filed pursuant to this subsection.

"(f) The court *may* amend its order or agreement at any time upon motion filed by either party." (Emphasis added.)

*Kyle Moved to Amend the PFA Order*

The first part of Kyle's argument requires this court to consider whether the trial court should have treated his answer objecting to the extension as a motion to amend the PFA order to exclude his minor children. Erin rebukes this argument because other than a sentence at the very end of his answer, Kyle never suggested that he was seeking modification of the PFA order under K.S.A. 2015 Supp. 60-3107(f). Erin is correct in that there is only one sentence in Kyle's answer which references modifying the PFA order. This sentence stated: "[T]he defendant would object to an extension of the protection order and prays this Court deny the petitioner's motion to extend or in the alternative amend the final order to no longer include the parties' minor child." Here, Kyle is offering a fallback argument in the event that the trial court rejects his objection to the motion to extend the PFA order. Based on Kyle's answer, it is clear that Kyle intended to request an amendment of the PFA order under K.S.A. 2015 Supp. 60-3107(f).

8

*Kyle's Fallback Argument*

Kyle's fallback argument requires this court to consider whether courts may amend a PFA order as stated under K.S.A. 2015 Supp. 60-3107(f) even though K.S.A. 2015 Supp. 60-3107(e)(2) states that courts "shall" grant a minimum 2-year extension upon the plaintiff's motion and evidence establishing that the defendant has committed a person felony against the plaintiff. In his brief, Kyle expressly "concede[s] [that] based on K.S.A. 60-3107(e)(2) the extension was going to be granted due to his conviction of a person felony against [Erin]." Nevertheless, Kyle argues that even though Erin would be entitled to a minimum 2-year extension of the PFA order under K.S.A. 2015 Supp. 60-3107(e)(2), this would not prevent the trial court from amending the PFA order to exclude the children from its protection. Erin makes a variety of arguments, including that the word "shall" as stated in K.S.A. 2015 Supp. 60-3107(e)(2) is mandatory. Erin asserts that because K.S.A. 2015 Supp. 60-3017(e)(2) is a mandatory provision, the trial court had no discretion to amend the PFA order under K.S.A. 2015 Supp. 60-3107(f).

To be sure, K.S.A. 2015 Supp. 60-3017(e)(2) states that courts "shall" grant a minimum 2-year extension if plaintiff meets the requirements stated therein. Our Supreme Court has implemented a four-factor test for determining whether the use of the word "shall" in a statute is mandatory or directory. Under the four-factor test, "[c]ourts should consider '(1) legislative context and history; (2) substantive effect on a party's rights versus merely form or procedural effect; (3) the existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provisions, *e.g.*, elections or notice on charges for driving under the influence.'" *Ambrosier v. Brownback*, 304 Kan. 907, 912, 375 P.3d 1007 (2016) (quoting *State v. Raschke*, 289 Kan. 911, 921, 219 P.3d 481 [2009]). When the provision at issue has a substantive effect on a party's rights, contains consequences for noncompliance, and involves a serious subject matter, the provision is more likely to be mandatory rather than directory. *Ambrosier*, 304 Kan. at 914-15.

As argued in Erin's brief, the first factor supports that the legislature intended the term "shall" in K.S.A. 2015 Supp. 60-3107(e)(2) to be mandatory. This is because in 2012, the legislature divided K.S.A. 2011 Supp. 60-3107(e) into two subsections, with subsection (e)(1) stating that courts "may" grant a 1-year extension upon motion of plaintiff and subsection (e)(2) stating that courts "shall" grant a minimum 2-year extension upon motion of plaintiff and presentation of certain evidence. See L. 2012, ch. 138, sec. 5. The legislature purposely used "shall" in subsection (e)(2) while it used the word "may" in subsection (e)(1). The legislature's construction of the sentence using the word "shall" shows that the legislature was mandating courts to grant an extension under subsection (e)(2) upon plaintiff's motion and plaintiff's presentation of certain evidence. In regards to factor two, because K.S.A. 2015 Supp. 60-3107(e)(2) affects both parties' substantive rights—either to be protected or restrained from another person—subsection (e)(2) is not just procedural. Thus, the term "shall" under this factor seems mandatory. In regards to factor three, nothing within K.S.A. 2015 Supp. 60-3107 creates consequences for failing to extend a PFA order a minimum of 2 years as stated under subsection (e)(2). Accordingly, the lack of consequences supports that the term "shall" is directory. Last, under factor four, the subject matter of the provision at issue in K.S.A. 2015 Supp. 60-3107(e)(2) leans in favor of the term "shall" being mandatory because the provision protects the abused from the abuser; therefore, it involves a very serious subject matter.

As a result, outside of factor three, the factors used in determining whether the use of the term "shall" is mandatory or directory weigh in the favor of the term "shall" being mandatory. In turn, when the legislature decided to enact K.S.A. 2015 Supp. 60-3107(e)(2) with the term "shall" as opposed to "may," it undoubtedly did so because it was mandating that courts grant a plaintiff's motion to extend a PFA order for a minimum of 2 years upon a showing that the defendant committed a person felony against the plaintiff or a member of the plaintiff's household.

10

Nevertheless, just because K.S.A. 2015 Supp. 60-3107(e)(2) mandates that the trial court grant an extension of a PFA order for a minimum of 2 years under certain circumstances does not mean that a party cannot then request an amendment or modification of a PFA order under K.S.A. 2015 Supp. 60-3107(f). In short, despite Erin's emphasis on the mandatory language within K.S.A. 2015 Supp. 60-3017(e)(2), the mandatory language has nothing to do with whether the court has discretion to amend a PFA order upon a party's motion under a different provision like K.S.A. 2015 Supp. 60-3017(f).

*The Plain Language of K.S.A. 2015 Supp. 60-3017(f) Supports Kyle's Interpretation*

In regards to its applicability, K.S.A. 2015 Supp. 60-3107(f) is very broad. Again, K.S.A. 2015 Supp. 60-3107(f) states: "The court may amend its order or agreement *at any time* upon motion filed by either party." (Emphasis added.) Thus, under the plain language of K.S.A. 2015 Supp. 60-3107(f), there is no time restraint concerning when a party can move to amend a PFA order. The lack of time restraint established by the "at any time" language within K.S.A. 2015 Supp. 60-3017(f) is incredibly important as it indicates that the legislature wanted to provide parties with the option of amending the PFA order at all times regardless of the mandates within other provisions of the Act. As with the "at any time" language within K.S.A. 22-3504(1)'s correction of illegal sentence statute, the "at any time" language in K.S.A. 2015 Supp. 60-3107(f) supports that a party may move and a court may consider a motion to amend a PFA order no matter when a party makes the motion.

Furthermore, K.S.A. 2015 Supp. 60-3107(e) explicitly states that "a protective order . . . shall remain in effect until *modified* or dismissed by the court and shall be for a fixed period of time not to exceed one year, except as provided in subsection (e)(1) and (e)(2)." (Emphasis added.) This means that contained within K.S.A. 2015 Supp. 60-3107(e), the legislature recognized that courts have discretion to modify a PFA order

11

notwithstanding the time limits outlined in the remainder of K.S.A. 2015 Supp. 60-3107(e). Surely, if the legislature did not intend for parties to be able to amend or modify the PFA orders after a granting of an extension under subsection (e)(1) or (e)(2), it would not have expressly mentioned the ability to modify a PFA order before listing the exceptions. Or, alternatively, the legislature would have included some condition stating that "parties may move to modify unless an extension is granted under (e)(1) or (e)(2)." Consequently, as Kyle argues in his brief, the plain language of K.S.A. 2015 Supp. 60-3017(f) supports that courts have the discretion to modify a PFA order at any time upon a party's motion irrespective of the trial court's prior order granting plaintiff's extension motion under K.S.A. 2015 Supp. 60-3017(e)(1) or (e)(2).

In her brief, Erin makes a couple of arguments about the plain language of K.S.A. 2015 Supp. 60-3107(f) in an attempt to bolster the trial court's ruling that it had no discretion to consider Kyle's motion to amend. First, Erin argues that the legislature's failure to mention subsections (e)(1) or (e)(2) in K.S.A. 2015 Supp. 60-3107(f) means that the legislature never intended for subsection (f) to be invoked if the court had already granted an extension under subsection (e)(1) or (e)(2). Yet, this argument is clearly incorrect. To begin with, the argument embodies the common logical fallacy of denying the antecedent, and it can be broken down in the following syllogism:

(1) If the legislature mentioned subsections (e)(1) and (e)(2) in subsection (f), then the legislature intended for subsection (f) to be invoked after an extension under subsection (e)(1) or (e)(2) had been granted;

(2) The legislature did not mention subsections (e)(1) and (e)(2) in subsection (f);

(3) Therefore, the legislature did not intend for subsection (f) to be invoked after an extension under subsection (e)(1) or (e)(2) had been granted.

Clearly, this conclusion does not follow because the legislature could have intended for subsection (f) to be invoked after an extension under subsection (e)(1) or (e)(2) despite the legislature's failure to mention subsections (e)(1) and (e)(2) in subsection (f).

12

Indeed, Erin's argument turns this court's rules of statutory interpretation on its head. Courts must analyze the meaning of a statute based on that statute's plain language. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). Moreover, courts are prohibited from reading language into a statute that is not readily found within. *Ullery*, 304 Kan. at 409. Here, Erin asserts that the absence of language pertaining to subsections (e)(1) and (e)(2) within subsection (f) means that the legislature prohibited parties from invoking subsection (f) after an extension is granted under subsections (e)(1) or (e)(2). Thus, Erin's argument requires this court to analyze words that are not included in the statute to determine conditions that are included in the statute. Yet, because courts must look to the plain language of the statute, not reading language into the statute that is not readily found therein, the absence of language supporting the existence of a condition generally results in a conclusion that a condition does not exist. For instance, here, the absence of language in K.S.A. 2015 Supp. 60-3107(f) prohibiting parties from moving to amend a PFA order following an extension under K.S.A. 2015 Supp. 60-3107(e)(1) or (e)(2) within subsection (f) tends to indicate that the legislature never intended to make such a prohibition, not that the legislature intended to make such a prohibition as Erin argues in her brief.

Next, Erin argues that a party could not move to amend a PFA order under K.S.A. 2015 Supp. 60-3017(f) after the court grants an extension under K.S.A. 2015 Supp. 60-3017(e)(2) because "[s]ubsection (f) clearly applies to original orders for protection." Yet again, no language within K.S.A. 2015 Supp. 60-3017(f) supports this argument. K.S.A. 2015 Supp. 60-3017(f) does not state that courts may amend its "original order" upon motion. Instead, K.S.A. 2015 Supp. 60-3017(f) merely states that courts may amend "its order" upon motion for amendment by any party at any time. Accordingly, to interpret K.S.A. 2015 Supp. 60-3017(f) as only being applicable when parties move to amend "original orders" would require this court to ignore the plain language of the statute and to rewrite the statute to include the nonexistent language within the statute. Consequently,

13

Erin's second argument regarding the plain language of K.S.A. 2015 Supp. 60-3017(f) is also incorrect.

*Erin's Various Other Arguments Fail*

Finally, it is important to address the various other arguments Erin has raised in support of the trial court's ruling that it did not have discretion to consider Kyle's motion to amend the PFA order under K.S.A. 2015 Supp. 60-3107(f). First, citing *State v. Turner*, 293 Kan. 1085, 1088, 272 P.3d 19 (2012), Erin points out that "a well-settled rule of statutory interpretation is that a specific statute controls over a more general statute." While this is correct, Erin's argument misses the mark. This is not a situation where two statutes deal with the same subject—one in general terms, the other in a more specific way. If it was, the general statute would generally yield to the more specific statute. Instead, K.S.A. 2015 Supp. 60-3107(e) generally addresses the length a PFA order remains in effect while K.S.A. 2015 Supp. 60-3107(f) addresses when a PFA order may be amended or modified.

Second, Erin argues that this court should accept her interpretation of K.S.A. 2015 Supp. 60-3107(e)(2) because the legislature intended for the Act to be liberally construed in favor of protecting victims of abuse. Erin is correct in that K.S.A. 60-3101(b) states that the Act is to "be liberally construed to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury. . . ." The liberal construction doctrine, however, is a cannon of statutory construction that cannot be invoked unless the language of the statute in question is ambiguous. See *Eveleigh v. Conness*, 261 Kan. 970, 977-78, 933 P.2d 675 (1997). Moreover, our Supreme Court has further explained that when the liberal construction doctrine is applied, courts must do so in a way to "carry out the intention of the legislature" without "delet[ing] vital provisions or suppl[ing] vital omissions in a statute." *Eveleigh*, 261 Kan. at 977-78. Here, the language is plain and unambiguous, meaning this court cannot invoke the liberal construction doctrine.

14

Furthermore, even if this court were to invoke the liberal construction doctrine, this court would have to read language into K.S.A. 2015 Supp. 60-3107(f), *i.e.*, ignore the intention of the legislature and supply a vital omission into K.S.A. 2015 Supp. 60-3107(f), to attain Erin's interpretation.

Finally, in a change of course, Erin contends that the trial court actually considered the merits of Kyle's modification request. Erin asserts that "Kyle's argument presumes that the District Court gave no consideration to the merits of his request and only denied it based on his interpretation of the statute." Erin continues by stating that this is not the case because the trial court asked her about her preference regarding whether the children should remain protected by the PFA order. Erin believes that the trial court would not have asked her about her preference if it was relying strictly on the plain language of K.S.A. 2015 Supp. 60-3107(e)(2). In other words, Erin argues that while denying Kyle's motion to amend, the trial judge considered the merits of Kyle's argument and therefore exercised his discretionary authority under K.S.A. 2015 Supp. 60-3107(f).

Nevertheless, Erin's assertion that the trial judge considered the merits of Kyle's argument and therefore exercised his discretion under K.S.A. 2015 Supp. 60-3107(f) is not supported by the trial judge's actual statements. To review, when the trial judge told Kyle he would not consider Kyle's motion to amend the PFA order, he stated that he could not because K.S.A. 2015 Supp. 60-3107(e)(2) included the term "shall." The trial judge then stated that he was "obligated to grant [the extension]," even as to the minor children, unless Erin did not mind if the PFA order was extended only as to her. Erin stated that she wanted the minor children protected under the extension as well, and the trial judge responded that because "the statute says 'shall'" he was "obligated to grant the order." The trial judge ended the hearing by stating that based on the statute he could not amend the PFA order to exclude the minor children because the original order included the minor children.

15

Given the preceding, it is readily apparent that the trial judge asked Erin about whether she wanted the minor children covered under the extension *because he was making sure he understood what she was requesting*. Essentially, the trial judge believed that if Erin requested an extension of the PFA order as to the minor children, then he was barred from considering Kyle's motion to amend the PFA order because he was mandated to extend the PFA order as to the minor children under K.S.A. 2015 Supp. 60-3107(e)(2).

Reversed and remanded with directions to consider Kyle's motion to amend the PFA order to exclude the minor children from the protection of this order.